## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 96-40406

RICKY DON BLACKMON,

Petitioner-Appellant,

versus

GARY L. JOHNSON, DIRECTOR, TEXAS
DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

Respondent-Appellee.

Appeal from the United States District Court
For the Eastern District of Texas

June 22, 1998

Before POLITZ, Chief Judge, JOLLY and EMILIO M. GARZA, Circuit Judges.

POLITZ, Chief Judge:

Convicted of capital murder and sentenced to death, Ricky Don Blackmon appeals the denial of his 28 U.S.C. § 2254 petition for habeas corpus. The district court denied relief and on an earlier appeal we vacated that judgment and remanded for an evidentiary hearing. On remand, the district court again denied relief and granted a certificate of probable cause. We now affirm.

## BACKGROUND

The facts underlying this appeal are set out in full in the prior panel opinion.[1] In summary, Blackmon was convicted of capital murder and sentenced to death by lethal injection. During the punishment phase of the trial, the state offered

---

[1] **Blackmon v. Scott**, 22 F.3d 560 (5th Cir. 1994).

evidence of an uncharged double homicide allegedly committed by Blackmon in Oklahoma. The state's witnesses implicating Blackmon in the Oklahoma murders included Terry Sittig, Raymond Smith, Jr. and Gary Keith Hall. Sittig had pleaded guilty to the Oklahoma murders, but testified that Blackmon assisted him. Smith and Hall were Blackmon's cellmates during his pre-trial detention and testified to statements Blackmon allegedly made about his involvement in the Oklahoma murders. Blackmon was not notified until October 26, 1987 that the Oklahoma murders would be offered as an extraneous offense in the punishment phase which began on November 9, 1987. Because Sittig, Smith, and Hall were incarcerated out of the county, Blackmon's counsel could not interview them until they were relocated. Counsel was not notified of the presence of Smith and Hall in the county until the night before they testified, and Sittig was not made available to counsel until five minutes before he testified, and then in a vehicle accompanied by police officers.

Blackmon's conviction and sentence were affirmed on direct appeal.[2] Blackmon unsuccessfully sought habeas relief in state court, and the federal district court denied relief as well. On appeal, we vacated the judgment of the district court and remanded for an evidentiary hearing and appropriate findings on Blackmon's claims that he was denied due process by the state's suppression of impeachment evidence, its use of perjured testimony, its use of extraneous offense evidence resulting in unfair surprise, and the denial of access to witnesses Terry Sittig,

---

[2] **Blackmon v. State**, 775 S.W.2d 649 (Tex. Crim. App. 1989) (unpublished), *cert. denied*, **Blackmon v. Texas**, 496 U.S. 931 (1990).

2

Raymond Smith, Jr. and Gary Keith Hall. In addition he contends that his sixth amendment rights were violated when Smith and Hall elicited statements from him during his pre-trial detention.

An evidentiary hearing was conducted on April 5 and 6, 1995. On the second day of testimony, after witnesses entered the courtroom, Blackmon moved for their sequestration. After noting that no one had invoked the rule of sequestration earlier, the court ordered the state to remove their witnesses from the courtroom. In response, the state pointed out that a witness for the petitioner had been present throughout the previous day's testimony. To be fair to both sides, the court did not order the witnesses sequestered. Before the next witness was called, Blackmon renewed his motion for sequestration. The court adhered to its previous ruling because the rule of sequestration was not invoked at the beginning of the proceedings. After the hearing, Blackmon moved to strike the testimony of the state's witnesses who were present in the courtroom during the testimony of other witnesses. The court denied this motion.

In due course the district court issued findings of fact and conclusions of law, entered final judgment denying Blackmon's petition for habeas corpus, and granted Blackmon a certificate of probable cause.[3] Blackmon timely appealed the denial of his habeas petition and the denial of his motion to sequester the witnesses during the evidentiary hearing. On appeal we review the district court's factual findings

---

[3] The respondent challenges the propriety of the certificate of probable cause. Subsequent jurisprudence has made the issues raised moot. See **Lindh v. Murphy**, 117 S.Ct. 2059 (1997).

for clear error, questions of law are reviewed de novo, and mixed questions of fact and law generally receive independent review.[4]

## ANALYSIS

The district court concluded that no due process violation occurred in the state's failure to disclose impeachment evidence or use of perjured testimony. The court found that the district attorney promised to write a letter to the parole board on behalf of Hall and Smith if they testified truthfully and that this information was not provided to defense counsel prior to trial, but that the jury was made aware that Hall and Smith could benefit from testifying truthfully through their cross examination and in counsel's closing arguments. The court further found that no promises were made to Sittig for his testimony. Blackmon challenges these findings.

The state's suppression of evidence favorable to the accused, including evidence that may be used to impeach a witness' credibility, constitutes a due process violation if the evidence is material to punishment.[5] Likewise, the state's knowing failure to correct false testimony violates due process if the false testimony reasonably could have affected the judgment of the jury.[6] In either case, the nondisclosed evidence must be material to warrant reversal.[7] Evidence is

---

[4] **Kirkpatrick v. Whitley**, 992 F.2d 491 (5th Cir. 1993).

[5] **Brady v. Maryland**, 373 U.S. 83 (1963); **United States v. Bagley**, 473 U.S. 667 (1985).

[6] **Napue v. Illinois**, 360 U.S. 264 (1959).

[7] **Giglio v. United States**, 405 U.S. 150 (1972).

4

material if a reasonable probability exists that had the evidence been disclosed to the defense, the proceeding's result would have been different.[8]

At the evidentiary hearing Sittig testified that the district attorney offered to write a letter for his prison jacket and to the parole board if he testified truthfully at the punishment phase of Blackmon's trial, but that he was reluctant to cooperate. District Attorney John S. Walker testified that it was not his practice to offer incentives for testimony and that he did not write any letters to fulfill promises, but that he did so out of charity for the witnesses' truthful testimony. Assistant District Attorney Robert Goodwin testified that nothing was offered to Sittig for his testimony, that Sittig was willing to testify truthfully, but did not want to appear to be cooperating, and that great efforts were made to compel his appearance at trial given his incarceration out of the state. Based on the record, and giving due deference to the district court's credibility determinations, we must conclude that the district court's finding that Sittig received no promises in exchange for his testimony is not clearly erroneous. Because no **Brady** evidence existed and Sittig was never questioned about any promises at trial, no due process violation occurred as to Sittig.

Both Smith and Hall testified at the evidentiary hearing that they were promised letters to the parole board if they testified truthfully at trial. Although these promises were not disclosed to defense counsel prior to trial, the district court found no due process violation because Hall testified at trial about the district

---

[8] **Bagley**, 473 U.S. at 682; **Kyles v. Whitley**, 514 U.S. 419 (1995).

attorney's promise to write a letter to the parole board and the district attorney conceded such in his closing argument. Smith, on the other hand, did not reveal that he received any promises when questioned, but the district court found that given the compound nature of the questions posed, Smith did not commit perjury. In addition, because Smith's testimony was substantially the same as Hall's, the evidence about the promise was not material.[9] Considering the record, we perceive no error in the district court's findings, and we find no due process violation occurred based on the failure to disclose impeachment evidence or use of perjured testimony.

The district court also concluded that there was no due process violation based on unfair surprise by the use of extraneous offense evidence or the denial of access to witnesses. The court found that because Blackmon's counsel was aware of the Oklahoma murders and Blackmon could not point to any material evidence that was not presented at trial, no prejudice existed to support Blackmon's unfair surprise claim. The court also found that Blackmon's counsel received sufficient notice to interview Smith and Hall before they testified, and Blackmon failed to demonstrate prejudice as a result of the minimal access he had to Sittig. Blackmon contends that these findings are erroneous.

A state violates a capital defendant's right to due process when it uses evidence at the sentencing phase of the trial which the defendant does not have a

---

[9] **Wilson v. Whitley**, 28 F.3d 433, 439 (5th Cir. 1994) ("when the testimony of the witness who might have been impeached by the undisclosed evidence is strongly corroborated by additional evidence supporting a guilty verdict, the undisclosed evidence is generally not found to be material.").

meaningful opportunity to rebut.[10] The denial of access to a material witness constitutes a *prima facie* deprivation of due process.[11] The demonstration of a due process violation in these instances justifies reversal only upon a showing of prejudice.[12]

Blackmon claims that he was misled about the state's intent to use the Oklahoma murders as extraneous offense evidence and did not have an opportunity to rebut evidence about this crime as a result.[13] The record reflects that defense counsel was aware of the Oklahoma murders prior to June 1, 1987 and the district attorney was aware that Blackmon was a suspect in the Oklahoma murders prior to May 1, 1987. The district attorney informed defense counsel of his knowledge of the Oklahoma murders on October 3, 1987. On October 6, 1987 the district attorney advised defense counsel and the court that he intended to offer extraneous offense evidence if there was sufficient proof, but such proof was not then available. The district attorney agreed to inform defense counsel if the situation changed. The district attorney continued to investigate Blackmon's connection to the Oklahoma murders and on October 26, 1987, immediately upon an assistant's return from questioning Sittig, the district attorney notified defense counsel that the

---

[10] **Gardner v. Florida**, 430 U.S. 349 (1977).

[11] **Lockett v. Blackburn**, 571 F.2d 309 (5th Cir. 1978); **United States v. Clemons**, 577 F.2d 1247, *modified*, 582 F.2d 1373 (5th Cir. 1978).

[12] **United States v. Henao**, 652 F.2d 591 (5th Cir. 1981).

[13] The respondent raises in its brief, for the first time in these proceedings, that Blackmon's unfair surprise claim is barred by **Teague v. Lane**, 489 U.S. 288 (1989). Given the history of these proceedings, we find that the state waived this defense, and we decline to apply it. **Blankenship v. Johnson**, 118 F.3d 312 (5th Cir. 1997).

7

Oklahoma murders would be offered as an extraneous offense in the punishment phase, which began on November 9, 1987.

Blackmon asserts that if he had been given more notice of the state's intent to present the Oklahoma murders as extraneous offense evidence, counsel could have investigated the crime and presented evidence rebutting Blackmon's involvement based on the eyewitness descriptions, the lack of an identification, and an alibi, as well as impeachment evidence regarding his vehicle and the number of individuals allegedly involved. The district court found, and the record supports, however, that in cross-examining Detective Dennis Madison, defense counsel presented evidence that the eyewitness' description of the suspect did not match Blackmon, the eyewitness could not identify Blackmon in a photographic spread, and that Blackmon had an alibi. Madison also testified that hair and fingerprinting sampling at the scene, and lab testing of Blackmon's car failed to reveal any evidence connecting Blackmon to the murders. That Sittig previously had indicated that more than two people were involved was also the subject of testimony. Because the record fully supports the district court's finding of no prejudice as to the unfair surprise claim, no error exists and Blackmon's claim with respect thereto lacks merit.

With regard to the denial of access to witnesses claim, Blackmon also fails to demonstrate prejudice. While the evidence in the record is conflicting about when defense counsel became aware that Hall and Smith were in Shelby County, the state concedes on appeal that defense counsel was not notified by the district

8

attorney about the witnesses' presence until late on the night before they testified. The record further reflects that defense counsel was not made aware of Sittig's presence in the county until Sittig was called to testify, and counsel was then given five minutes in which to question Sittig about his statement in a police car surrounded by law enforcement officials.

Blackmon asserts that if counsel had obtained adequate access to these witnesses prior to their testifying, the witnesses' criminal histories would have been investigated, the witnesses would have been questioned about any promises they received for their testimony, and their backgrounds would have been investigated to obtain impeachment evidence. The record reflects, however, that Smith, Hall and Sittig testified to their criminal records at trial. Hall and Smith were also questioned about any promises they received for their testimony and, as discussed *supra*, no prejudice resulted in this regard. The district court found that defense counsel adequately cross-examined these witnesses and Detective Madison, eliciting impeachment evidence. The district court's findings and its conclusion that Blackmon suffered no prejudice from his access to the witnesses are fully supported by the record. Accordingly, we conclude that no due process violation based on unfair surprise or the denial of access to witnesses occurred.

As to Blackmon's sixth amendment **Massiah**[14] claim, the district court found that jailer Phillip Lynch told Smith and Hall about the Oklahoma murders and that they might receive some benefit in their cases if they learned more about the crime,

---

[14] **Massiah v. United States**, 377 U.S. 201 (1964).

but Smith and Hall did not question Blackmon about the Oklahoma murders in an effort to elicit incriminating statements. Blackmon asserts that this finding is erroneous.

The sixth amendment is violated when statements are deliberately elicited from the accused after the right to counsel has attached, but there is no violation when statements are obtained by luck or happenstance.[15] When an agent does more than just listen, but also initiates discussion of the case which leads to incriminating statements, a sixth amendment violation occurs.[16]

The record reflects that Lynch briefed Hall and Smith on the charges against Blackmon and the Oklahoma murders and told them that any additional information might help their cases, but neither Lynch, Hall, nor Smith testified that Hall and Smith were told to question Blackmon about the crimes, or that they in fact did so. Instead, the record reveals that Smith and Hall obtained information from Blackmon by primarily "keeping their ears open." The only evidence of an initiation of discussion was an incident where Hall told Blackmon that what happened in Oklahoma was not going to happen to him and that he was not afraid after Hall and Blackmon became angry over a disagreement with a card game. After tempers cooled, Blackmon questioned Hall about his knowledge of the Oklahoma murders and began discussing the crime. The district court found that this incident was not initiated for the purpose of eliciting statements about the

---

[15] **Maine v. Moulton**, 474 U.S. 159 (1985).

[16] **United States v. Johnson**, 954 F.2d 1015 (5th Cir. 1992).

10

Oklahoma murders, but was the result of an angry disagreement and Hall's defense of homosexuals. Considering the record and deferring to the trial court's credibility determinations, we find no clear error in its findings. Consequently, because Hall and Smith did not deliberately elicit the statements, no sixth amendment violation occurred.

Blackmon also contends that the district court erred in not sequestering the witnesses during the evidentiary hearing and that the testimony of Robert Goodwin and Paul Ross should be stricken. Blackmon invoked the sequestration rule during the second day of testimony after witnesses entered the courtroom. The court did not order the witnesses sequestered because the rule had not been invoked at the beginning of the proceedings and a witness for Blackmon had been present in the courtroom during the preceding day's testimony.

Rule 615 of the Federal Rules of Evidence provides, "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses...." We have held that the district court's decision on the sequestration of witnesses is reviewed for abuse of discretion and a party must demonstrate "sufficient prejudice" to warrant relief.[17] Even if we were to agree that the trial court erred in not sequestering the witnesses, Blackmon is unable to demonstrate sufficient prejudice from the testimony of Goodwin and Ross. Blackmon points to two instances in the witnesses' testimony where they referred to testimony heard earlier in court. Goodwin's memory was refreshed as to names

---

[17] **United States v. Payan**, 992 F.2d 1387, 1394 (5th Cir. 1993).

11

and Ross noted that he was not aware of an alibi report until he heard reference to it that day in court. These instances are insufficient to demonstrate prejudice as they do not relate to substantive issues. Although Ross' and Goodwin's testimony confirmed that of other witnesses, Blackmon suggests that such confirmation is suspect given conflicting documentary evidence. This evidence was before the court, however, and there is no indication that the court was unable to assess the witnesses' credibility under the circumstances. We perceive no prejudice.

The judgment appealed is AFFIRMED.