# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

——————

m 98-31072

——————

MILTON ERIC DICKINSON,

Petitioner-Appellant,

VERSUS

BURL CAIN,
WARDEN, LOUISIANA STATE PENITENTIARY,

Respondent-Appellee.

——————

Appeal from the United States District Court
for the Middle District of Louisiana

——————

March 10, 2000

Before DAVIS, HALL,[*] and SMITH,
Circuit Judges.

PER CURIAM:[**]

Milton Dickinson appeals the denial of his petition for writ of habeas corpus under 28 U.S.C. § 2254. Finding no error, we affirm.

## I.

Dickinson was convicted of two counts of attempted aggravated rape and two counts of aggravated kidnapping. He was sentenced to two consecutive life sentences on the kidnapping counts and two forty-year sentences on the rape counts, the latter to run concurrently with each other and with the first life sentence. His convictions and sentence were affirmed on direct appeal.

In November 1995, after filing several applications for postconviction relief in state and federal court, Dickinson filed the instant petition for federal habeas relief. The district court denied relief and denied a certificate of appealability ("COA"). Because Dickinson's petition was filed before the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"),[1] this court granted a certificate of probable cause to appeal instead of a COA. *See Green v. Johnson*, 116 F.3d 1115, 1119-20 (5th Cir. 1997).

Dickinson contends that the trial court's reasonable doubt jury instruction was constitutionally infirm; that the prosecution suppressed favorable evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); that the court improperly instructed the jury as to

[*] Cynthia Holcomb Hall, Circuit Judge of the Ninth Circuit, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Pub. L. No. 104-132, 110 Stat. 1214 (1996). We apply pre-AEDPA habeas law to Dickinson's claims. *See Green*, 116 F.3d at 1120.

the elements of aggravated kidnapping; and that the evidence was insufficient to support aggravated kidnapping.

## II.

"In a habeas corpus appeal, we review the district court's findings of fact for clear error and review its conclusions of law *de novo*, applying the same standard of review to the state court's decision as the district court." *Thompson v. Cain*, 161 F.3d 802, 805 (5th Cir. 1998). Mixed questions of fact and law generally receive independent review. *See Blackmon v. Johnson*, 145 F.3d 205, 208 (5th Cir. 1998), *cert. denied*, 526 U.S. 1021 (1999). The legal standard in a due process challenge to a reasonable doubt instruction is "whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard." *Victor v. Nebraska*, 511 U.S. 1, 6 (1994). *See also Morris v. Cain*, 186 F.3d 581, 585 (5th Cir. 1999).

*Cage v. Louisiana*, 498 U.S. 39 (1990), is the only case in which the Court has held that a reasonable doubt instruction violated the Due Process Clause. The Court refined the *Cage* analysis in *Victor v. Nebraska*, 511 U.S. 1 (1994). In *Humphrey v. Cain*, 138 F.3d 552, 553 (5th Cir.) (en banc), *cert. denied*, 525 U.S. 943, *and cert. denied*, 525 U.S. 935 (1998), we held that "*Cage-Victor* error fits within the second *Teague* exception, making it available in federal habeas to a state prisoner whose criminal conviction was final when those cases were decided." Therefore, we apply the *Cage-Victor* analysis to the instruction given at Dickinson's trial.

A portion of that instruction is as follows:

This doubt must be a reasonable one; that is, one founded upon a real, tangible, substantial basis and not upon a mere caprice, fancy or conjecture. It must be such a doubt as would give rise to a grave uncertainty in your minds by reason of the unsatisfactory character of the evidence, one that would make you feel that you had not an abiding conviction to a moral certainty as to the defendant's guilt. To put it differently, you must be satisfied of both defendants' guilt by that degree of assurance which induces a man of sound mind to act without a doubt upon the conclusions to which it leads.

Although the references to "grave uncertainty" and "moral certainty" are not optimal, we affirm the district cour's conclusion that the instruction did not violate the Due Process Clause.

In *Cage*, the Court held that the reasonable doubt instruction in that case, which included the terms "grave uncertainty," "actual substantial doubt," and "moral certainty," violated due process:

> It is plain to us that the words "substantial" and "grave," as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable-doubt standard. When those statements are then considered with the reference to "moral certainty," rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.

*Cage*, 498 U.S. at 41. The instruction given in Dickinson's trial includes identical "grave uncertainty" language but does not contain the "substantial doubt" language. It does contain "moral certainty," but that phrase was used in a context different from that in *Cage*; the Court articulated the significance of the difference in *Victor*.

In *Victor*, the Court held that two instructions defining reasonable doubt did not violate the Due Process Clause. While neither instruction contained the "grave uncertainty" language, both contained "moral certainty," and one contained "actual and substantial doubt." *See Victor*, 511 U.S. at 7, 18. Discussing the "moral certainty" component, the Court stated that

> [a]lthough . . . moral certainty is ambiguous in the abstract, the rest of the instruction . . . lends content to the phrase. The jurors were told that they must have 'an abiding conviction, to a moral certainty, of the truth of the

charge.' An instruction cast in terms of an abiding conviction as to guilt, without reference to moral certainty, correctly states the government' burden of proof. . . . As used in this instruction, therefore, we are satisfied that the reference to moral certainty, in conjunction with the abiding conviction language, impressed upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused.

*Id.* at 14-15 (internal citation and quotation marks omitted). The Court went on to stress other elements of the instruction explicitly requiring that the jurors' conclusions be based solely on the evidence in the case. *See id.* at 16.[2]

The instruction given in Dickinson's trial contained the language "an abiding conviction to a moral certainty as to the defendant's guilt." This is identical in all crucial respects to the "moral certainty" language accepted in *Victor*. Dickinson's instruction also contained requirements that the jurors' conclusions be based solely on the evidence, similar to the requirements in *Victor*.[3]

---

[2] "The jury was told 'to determine the facts of the case from the evidence received in the trial and not from any other source.' The court continued that 'you must not be influenced by pity for a defendant or by prejudice against him. . . . You must not be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling." *Victor*, 511 U.S. at 16 (internal citation omitted). In *Victor* and in this case, "the evidence" is mentioned in the same sentence containing "moral certainty."

[3] The language is as follows: "You are prohibited by law and by your oath from going beyond the evidence to seek for doubts upon which to acquit the accused, but must confine yourselves strictly to a dispassionate consideration of the testimony upon the trial. You must not resort to extraneous or outside facts or factors or circumstances in reaching your verdict, and you are not at liberty to adopt unreasonable theories or
(continued...)

3

In discussing the "moral certainty" language in the second charge, the *Victor* Court stated:

> Instructing the jurors that they must have an abiding conviction of the defendant's guilt does much to alleviate any concerns that the phrase "moral certainty" might be misunderstood in the abstract. The instruction also equated a doubt sufficient to preclude moral certainty with a doubt that would cause a reasonable person to hesitate to act.

*Id.* at 21 (internal citation omitted). Although the language is slightly different, Dickinson's instruction similarly analogizes the "moral certainty" language: "To put it differently, you must be satisfied of both defendants' guilt by that degree of assurance which induces a man of sound mind to act without a doubt upon the conclusions to which it leads."

In *Gaston v. Whitley*, 67 F.3d 121 (5th Cir. 1995), we upheld a reasonable doubt instruction that included the phrases "grave uncertainty" and "moral certainty," the same disfavored phrases included at Dickinson's trial:

> It must be such a doubt as would give rise in your minds to a grave uncertainty by reason of the unsatisfactory character of the evidence, one that would make you feel that you had not an abiding conviction to a mortal–moral certainty as to the accused's guilt for that degree of assurance which induces a man of sound mind to act without doubt upon the conclusion to which his mind leads him.

*Id.* at 121.[4] Based on the inclusion of the "al

_____

(...continued)
suppositions in considering the evidence in order to justify a verdict of conviction. You are to be governed exclusively by the evidence and by the law as heard by you in this courtroom."

[4] When *Gaston* was decided, we had precedent
(continued...)

ternative definition of reasonable doubt" concerning "a man of sound mind," we held that the language as a whole satisfied due process. *See id.* at 123. The same is true here.

This holding is consistent with *Morris*, because there the unconstitutional instruction contained not only "grave uncertainty" and "moral certainty" but also "actual or substantial doubt," and did not contain "abiding conviction" and other relevant qualifying language. *See id.* at 586-87.

### III.

Dickinson claims that the prosecution suppressed favorable evidence in violation of *Brady*. The Due Process Clause of the Fourteenth Amendment requires that the government turn over evidence in its possession that is both favorable to the accused and material to either guilt or punishment. *See Brady*, 373 U.S. at 87; *United States v. Stephens*, 964 F.2d 424, 435 (5th Cir. 1992). "Favorable" evidence includes both exculpatory substantive evidence and impeachment evidence. *See United States v. Bagley*, 473 U.S. 667, 676 (1985). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682, 685. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* at 682.[5]

_____

(...continued)
that *Cage* was not retroactive. *See Gaston*, 67 F.3d at 122. The foregoing discussion of *Cage* and *Victor* establishes that applying *Cage-Victor*, rather than just *Victor*, does not affect the *Gaston* holding.

[5] Dickinson's conviction was in 1977 and thus predated *United States v. Bagley*, 473 U.S. 667 (1985). Therefore, the trial court applied *Brady* and *United States v. Agurs*, 427 U.S. 97 (1976). Nothing in *Bagley* would alter the court's analysis, because, as discussed below, the court found that the information was not material, meaning it would not have affected the outcome of the trial. *Agurs*
(continued...)

During trial, Dickinson filed a motion to compel the prosecution to give access to all tape-recorded statements of the victims. The court did not grant the motion but instead listened to the tapes *in camera* following the trial testimony of both victims, to determine whether they contained favorable material.

The court found that the tapes contained no exculpatory evidence, that the content was virtually identical to the victims' in-court testimony, and that the tapes actually contained testimony more incriminating to the defendant than did the victims' trial testimony. The court therefore denied defense access to the tapes, finding "no material of such a nature that a jury on these tapes alone could find a divergence or a disagreement with the testimony given by these witnesses in court as to elevate itself to constitute a reasonable doubt in the minds of the jury." The tapes were not introduced at trial and are no longer available.

"Ordinarily when the trial court has conducted an *in camera* examination we will not go beyond its finding to determine whether exculpatory materials were withheld." *Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988).[6] Therefore, we need not consider the merits of Dickinson's *Brady* claim. Because, however, we have some concern with what standard the trial court may have applied,[7] we also conclude

that Dickinson's claim fails on the merits. First, he alleges only minor discrepancies between the taped statements and trial testimony that, even if proven, would not create a reasonable probability that the result would have been different.[8] More importantly, he has no evidence regarding the content of the tapes other than the findings of the court, which do not support his claims of tape content.

IV.

Dickinson claims that the court improperly instructed the jury as to the elements of aggravated kidnapping.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is whether the ailing instruction by itself so infected the entire trial that the resulting

---

(...continued)
and *Bagley* recognize this general requirement. *See Bagley*, 473 U.S. at 674-75 (quoting *Agurs*).

[6] See also United States v. Ross, 511 F.2d 757, 765 (5th Cir. 1975); *United States v. Register*, 496 F.2d 1072, 1081 (5th Cir. 1974) ("We will not go beyond the trial court's finding to encourage shipping prosecutor's files to the appellate court whenever the defense cries *Brady*.").

[7] The court found that there was no material on the tapes "of such a nature that a jury *on these tapes alone* could find a divergence or a disagreement with the testimony . . . as to elevate itself to constitute a reasonable doubt" (emphasis added). The correct standard is not that the
(continued...)

---

(...continued)
claimed exculpatory evidence alone must create a reasonable doubt, but that the entire record including that evidence creates such a doubt:

The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. . . . This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.

*Agurs*, 427 U.S. at 112-13.

[8] These alleged discrepancies consist of minor variations in the victims' descriptions of the attackers, their vehicle, and their apartment, none of which goes to the heart of the abundant identification evidence.

5

conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned.

*Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (internal quotation marks and citation omitted); *see also Kinnamon v. Scott*, 33 F.3d 462, 465 (5th Cir. 1994). Any error or omission must be evaluated in the context not only of the overall charge, but also of the entire record, including testimony and the argument of counsel. *See Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973); *Henderson*, 431 U.S. at 152. We must determine whether there is a reasonable likelihood that the jury applied the aggravated kidnapping instruction in a constitutionally impermissible way. *See Kinnamon*, 33 F.3d at 465.

At the time of Dickinson's offenses and currently, LA. R.S. 14:44 provides as follows:

Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:

(1) The forcible seizing and carrying of any person from one place to another; or

(2) The enticing or persuading of any person to go from one place to another; or

(3) The imprisoning or forcible secreting of any person.

Subsection (1) is at issue here.

The trial court instructed the jury by first reciting the precise text of LA. R.S. 14:44(1), with the exception of the following two inconsequential modifications: "[A] release" was replaced by "the release," and "seizing and carrying away of" was used in place of "seizing and carrying of." The court then emphasized the necessary "state of mind that [it] just set out above, the intent to force the victim to give up something of apparent value to secure their release."

The court then went on to define and distinguish the lesser included offense of simple kidnapping and stated the following:

Bear in mind the difference. The first one, aggravated[,] has that additional element that it must be done with the intent thereby to force the victim to give up something of apparent present or prospective value. Simple kidnapping does not have that in it.

Dickinson claims this was error, because the court failed similarly to emphasize that *another* difference between simple and aggravated kidnapping is that aggravated kidnapping requires the conditioning of release on the victims' relinquishment of that value.

The decision to "emphasize" only one of the distinguishing elements of aggravated kidnapping did not violate due process: There is no reasonable likelihood that the jury applied the instruction in a constitutionally impermissible way. By first giving the complete statutory definition of both offenses, and then attempting to highlight the key distinction between the offenses, the court gave the jury adequate direction.[9] Although it may not have been optimal to term the one distinction "*the* difference" (emphasis added), the instruction did not violate due process.

---

[9] "The essential difference" between the offenses *is* the distinction emphasized by the trial court. *See State v. Arnold*, 548 So. 2d 920, 923 (La. 1989) (quoting *State v. Polk*, 376 So. 2d 151, 152 n.1 (La. 1979)).

6

## V.

Dickinson claims insufficient evidence to support his aggravated kidnapping convictions. "In evaluating a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and uphold the verdict if, but only if, a rational juror could have found each element of the offense beyond a reasonable doubt." *United States v. Brown*, 186 F.3d 661, 664 (5th Cir. 1999); *see also Foy v. Donnelly*, 959 F.2d 1307, 1313 (5th Cir. 1992). We apply this standard with explicit reference to the substantive elements of the criminal offense as defined by state law, and give great weight to the state court's determination that the evidence is sufficient. *See Foy*, 959 F.2d at 1314.

In *State v. Arnold*, 548 So. 2d 920, 923 (La. 1989), the court identified the elements of aggravated kidnapping as follows: (1) the forcible seizing, and (2) the carrying of any person from one place to another, (3) with the intent to force the victim to give up anything of value, (4) in order to secure the release of that person. Dickinson argues that there was no evidence of the fourth element; in other words, he contends there was no evidence that he intended to condition the victims' release on their submitting to sexual intercourse. As we will explain, *Arnold* makes plain that the evidence is sufficient to prove all four elements of the offense:

> [T]he relevant factor in applying the fourth element of aggravated kidnapping is not whether the kidnapper explicitly communicated to the victim that performance of sexual acts would result in his or her release, but whether the kidnapper intended to extort sexual gratification from the victim by playing upon the victim's hope for release. This intent is manifested not merely by the kidnapper's words or actions, but by analyzing whether a reasonable person in the victim's place, given the totality of the circumstances, would believe that he or she would not be safely released unless he or she complied with the kidnapper's demands for sexual gratification.

*Arnold*, 548 So. 2d at 924.

Citing *Bouie v. City of Columbia*, 378 U.S. 347 (1964), Dickinson argues that the *Arnold* holding cannot be applied to his 1977 conviction. In *Bouie*, the Court held that an *unforeseeable* state-court construction of a criminal statute cannot be applied retroactively. *See id.* Dickinson's claim is without merit, because the *Arnold* court specifically addressed the precedent and opined that

> [a] review of the history of the statute and our jurisprudence reveals that [the requirement Dickinson advocates] has never been part of the law of aggravated kidnapping. Rather, all the law has required is evidence of defendant's intent to extort something of value by playing upon the victim's hope of release.

*Arnold*, 548 So. 2d at 923.[10]

The evidence is sufficient to support Dickinson's conviction. He abducted both victims at knifepoint, forced them into a car, and drove them to an apartment where they were raped by him and his cohort. Both victims gave substantial testimony corroborating their claims. The opinion in *Arnold*, 548 So. 2d at 921, 924, makes plain that when a victim is forcibly abducted at knifepoint, driven to a remote location, and forced to have sexual intercourse, the requirements of aggravated kidnapping are established.

AFFIRMED.

---

[10] In fact, even the dissent in *Arnold* specifically cites the case sub judice as one in which sufficient evidence to satisfy all elements of the offense *did* exist. *See Arnold*, 548 So. 2d at 929 n.5 (Calogero, J., dissenting in part) (discussing *State v. Dickinson*, 370 So. 2d 557 (La. 1979)).