REVISED - September 22, 2000

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-20976
_____


ALVIN URIAL GOODWIN III

                              Petitioner - Appellant

v.

GARY L JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, INSTITUTIONAL DIVISION

                              Respondent - Appellee

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

August 17, 2000

Before KING, Chief Judge, and JOLLY and DeMOSS, Circuit Judges.

KING, Chief Judge:

     Petitioner-Appellant Alvin Urial Goodwin III, a Texas death-

row inmate, appeals from the district court's denial of his

application for a writ of habeas corpus, arguing that the lower

court's finding that he had not invoked his right to counsel

before confessing to the crime of which he was convicted is

clearly erroneous.  He also requests that we revisit an

ineffective-assistance-of-counsel claim in light of the Supreme

Court's intervening decision in Williams v. Taylor, 120 S. Ct.

1495 (2000).  We decide that the lower court's finding is not

clearly erroneous and deny Goodwin's request to revisit the ineffective-assistance-of-counsel claim. As a result, we affirm the judgment of the district court.


I. FACTUAL AND PROCEDURAL BACKGROUND

This is an appeal from a judgment entered after remand. Petitioner-Appellant Alvin Urial Goodwin III ("Goodwin") argued in his first appeal that the district court erred in failing to conduct an evidentiary hearing on his claim that admission of his confessions violated the U.S. Constitution as those confessions were obtained after he had invoked his Fifth Amendment right to counsel. We held in Goodwin v. Johnson, 132 F.3d 162 (5th Cir. 1998), that Goodwin was entitled to an evidentiary hearing to resolve a factual dispute underlying his Fifth Amendment claim. See id. at 185. The district court has conducted that hearing, issued its findings, and entered judgment denying habeas relief. Having described much of the factual background of this case before, see id. at 167-68, we concentrate here only on those aspects relevant to the issues Goodwin raises on this appeal.

Suspecting they were involved in several burglaries and attempted burglaries, Burlington, Iowa police officers arrested Goodwin and Billy Dan Atkins, Jr. in the early morning hours of Saturday, January 17, 1987 after they were observed approaching numerous parked cars. Goodwin, who was found with a loaded, cocked weapon and a crowbar, was arrested for burglary and going

2

armed with intent. At the time he was arrested, Goodwin told officers that his name was Bradley Douglas Murphy and that he did not have a social security number.

According to Goodwin's 1994 affidavit, after he was taken to the Burlington police station, he refused to sign a waiver of rights form and to give a statement, and instead, requested an attorney. His affidavit states further that between the time he requested an attorney and the time he was questioned by Texas law enforcement officers on January 21, he was not asked any incriminating questions. Goodwin also states that during that same period, he gave his real name and social security number, and was taken before a judge who informed him of the identity of his court-appointed attorney.

Other evidence corroborates some of Goodwin's affidavit. Goodwin was taken before a judge twice between his arrest and his questioning by Texas law enforcement officials. On January 17, 1987, Goodwin appeared before a judge and requested a court-appointed attorney. After setting bond at $25,000, the judge continued the matter until January 20, 1987, at which time he appointed Alan Waples to be Goodwin's counsel. Goodwin's investigator discovered in September, 1998 a copy of form entitled "Statement of Rights and Acknowledgment and Waiver." That document, which refers to Goodwin by the alias he had given, shows that approximately an hour and a half after Goodwin was arrested, Lieutenant Larry E. Walker of the Burlington Police

3

Department presented Goodwin with a Statement of Rights form, on which Goodwin's rights to remain silent, to consult with an attorney, and to have an attorney present during questioning were set forth. The document also shows that Goodwin refused to sign below the acknowledgment and waiver of the rights paragraph.

Iowa records do not indicate whether Goodwin was questioned by Iowa police between January 17 and January 21. An affidavit from Lt. Walker indicates that if Goodwin refused to sign the form, "no further conversation would have taken place." Iowa records do indicate that on January 17, Atkins was presented with a rights form at almost the exact time that Goodwin was. Atkins signed his acknowledgment and waiver of rights and was thereafter questioned by Iowa officers regarding the Iowa burglaries. Atkins was again questioned by Iowa officers on January 21, this time with counsel present. By January 21, Iowa officers had twice obtained warrants and searched the residence that Goodwin and Atkins shared.

The morning of January 21, two law enforcement officers from Texas interviewed Goodwin regarding the murder of Douglas Tillerson.[1] Goodwin was read his <u>Miranda</u> rights, and he acknowledged that he understood them. Officers described the evidence that they had assembled (e.g., they had found Tillerson's body, they had the murder weapon, they had recovered

---

[1] The officers had interviewed Atkins regarding Tillerson's murder the previous day.

property taken from Tillerson's home the night he disappeared) and that they had a capital murder warrant for Atkins. This prompted Goodwin to state that he, Goodwin, was "on death row" because he was the one who had pulled the trigger.

Goodwin was then asked whether he wanted to make a statement, and he responded that he did because he wanted to tell what had happened. Goodwin was again read his rights, at which point he signed the waiver of rights form. Thereafter, Goodwin gave a video-taped confession. Officers read Goodwin his rights one more time at the conclusion of his video-taped statement. Later on January 21, Goodwin was flown back to Texas in the custody of the law enforcement officers.[2] The next day, after being brought before a magistrate, Goodwin was again read his rights, and he again agreed to waive those rights. Goodwin then gave a written confession. He subsequently also identified property stolen from Tillerson and the gun used by Atkins during the robbery and the murder.

In Goodwin, we assessed whether the district court properly granted summary judgment to Respondent-Appellee Gary L. Johnson (hereinafter "the State"). See 132 F.3d at 169. We determined, inter alia, that evidence in the record indicated the existence of a genuine issue of material fact with respect to Goodwin's Fifth Amendment right-to-counsel claim. See id. at 182 n.15. In

---

[2] Before departing Iowa, Goodwin, along with his counsel, appeared before a judge and signed a waiver of extradition. The Iowa burglary charges were dismissed.

remanding for an evidentiary hearing on the question whether Goodwin had invoked his Fifth Amendment right to counsel prior to being interrogated by Texas law enforcement officials, we explicitly stated that the hearing "should not be a wide-ranging fishing expedition, but a brief adversarial hearing concerning a discrete factual issue." Id. at 185 (internal quotation marks and brackets omitted).

The court below adhered to this directive. After the document indicating Goodwin's refusal to sign a waiver was discovered, and the parties had submitted the court-ordered joint chronology of events and had completed their pre-hearing investigation, Goodwin on December 9, 1998 filed a motion for summary judgment. Along with its opposition to this motion, the State filed a motion to dismiss the petition under Rules Governing Habeas Corpus Cases Under Section 2254 9(a), arguing that Goodwin's use of the waiver form is barred by the doctrine of laches, and that his delay in presenting the form prejudiced the State's ability to respond to Goodwin's claim. The State contended that the passage of time made it impossible to disprove Goodwin's assertions, as Lt. Walker now has no recollection of any conversations with Goodwin and there is no alternative source for such information.

The district court denied Goodwin's motion for summary judgment, and ordered a video-taped deposition of Goodwin to take place. After completion of this deposition, the court heard oral

argument on the evidence.  It ultimately found that Goodwin did

not invoke the right to counsel before he confessed to Texas law

enforcement officials in Iowa.  The court did not rule on the

State's Rule 9(a) motion, but found that Goodwin's delay in

raising the issue substantially prejudiced the State's ability to

establish precisely the sequence of events.  Judgment denying

Goodwin's application for habeas relief was entered October 18,

1999.  The district court also granted Goodwin a Certificate of

Probable Cause ("CPC").  Goodwin timely appeals.


## II.   INVOCATION OF THE RIGHT TO COUNSEL

We will not upset the district court's findings unless we

find clear error.  See Blackmon v. Johnson, 145 F.3d 205, 208

(5th Cir. 1998), cert. denied, 526 U.S. 1021 (1999).  Goodwin

points to six pieces of evidence as supporting his contention

that the district court's finding that he had not invoked his

Fifth Amendment right to counsel is clearly erroneous: (1) his

refusal to sign his waiver form;[3] (2) the extensive investigation

---

[3]  The State argues that we should declare that Goodwin's
use of this document to support his claim is barred by the
doctrine of laches, and contends that we should use Rule 9(a) as
a guide for our determination that the doctrine is applicable
here.  In effect, the State appears to argue that the principles
underlying Rule 9(a) can be applied to "dismiss" individual
pieces of evidence from the record.  It cites no supporting
authority for this argument.
     Although Rule 9(a) "codifies the equitable doctrine of
laches as applied to habeas corpus petitions," Walters v. Scott,
21 F.3d 683, 686 (5th Cir. 1994), we decline to use principles
underlying the Rule in the fashion that the State advocates.  As
the Supreme Court noted in Lonchar v. Thomas, 517 U.S. 314

7

into the Iowa burglaries conducted by Iowa police officers; (3) the interrogation of Atkins after he signed his waiver form; (4) the cessation of Atkins's interrogation shortly after he asserted his right to counsel; (5) the absence of any indication that Iowa police officers interrogated Goodwin; and (6) Goodwin's affidavit, video-taped deposition, and his chronology of events evidently prepared for his trial attorney, each of which indicates that he requested an attorney. Goodwin asserts that this evidence is uncontroverted and allows for only one conclusion: that he invoked his right to counsel before being interrogated by Texas law enforcement officials.

Because Goodwin's claim is based on events that occurred thirteen years ago, we must proceed cautiously. As then Justice Rehnquist stated, a federal court in our circumstances

> should not lose sight of the fact that it is the habeas applicant who has the burden of proving a constitutional violation, and that no system of justice which gives both society and a defendant their due is aided by attempting to reconstruct or re-evaluate events that took place decades ago, as if it were an archaeological expedition, rather than an exercise in the administration of justice.

--------

(1996), Rule 9(a) deals directly with delay, see id. at 326, and notably for our purposes here, does not mention the possibility of eliminating from the record evidence that surfaces after an evidentiary hearing has been ruled necessary. We are mindful of the Court's caution against ad hoc departures from the Habeas Rules. See id. at 328-29. We also question how evidentiary hearings could be used to provide petitioners with a full and fair adjudication of their claims if the State could use Rule 9(a)'s principles to eliminate evidence discovered in preparation for those hearings simply because the passage of time makes that evidence difficult to refute.

Engle v. Sims, 450 U.S. 936, 941-42 (1981) (Rehnquist, J., dissenting from the denial of a petition for certiorari) (internal citations omitted); see also Tyler v. Beto, 391 F.2d 993, 995 (5th Cir. 1968) (noting that a petitioner in a habeas corpus proceeding has the burden of proof to establish sufficient facts to warrant a finding of denial of constitutional rights). We have reviewed and considered the portions of the record relevant to Goodwin's Fifth Amendment claim, and cannot say that we are "left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).

In order for Goodwin's confessions to be inadmissible, Goodwin had to have affirmatively indicated to Iowa police officers that he did not want to answer their questions without an attorney present.[4] See McNeil v. Wisconsin, 501 U.S. 171, 178 (1991) ("The rule of [Edwards v. Arizona, 451 U.S. 477 (1981)] applies only when the suspect 'ha[s] expressed' his wish for the particular sort of lawyerly assistance that is the subject of Miranda. It requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the

---

[4] We note that in both his second state habeas petition and his federal habeas petition, Goodwin argued that he invoked his right to counsel when he requested a court-appointed attorney. In both cases, Goodwin provided his 1994 affidavit in support of his Fifth Amendment right-to-counsel claim. We rejected on Goodwin's first appeal the argument that his request for a court-appointed attorney invoked Goodwin's Fifth Amendment right to counsel. See Goodwin, 132 F.3d at 179 n.14.

9

assistance of an attorney in dealing with custodial interrogation by the police." (quoting Edwards, 451 U.S. at 484) (emphasis added in McNeil)). A refusal to sign a waiver form is insufficient to show invocation of one's Fifth Amendment right to counsel. See United States v. Chapa-Garza, 62 F.3d 118, 122 (5th Cir. 1995); United States v. McDaniel, 463 F.2d 129, 135 (5th Cir. 1972). "A refusal to sign a waiver may indicate nothing more than a reluctance to put pen to paper under the circumstance of custody." Id.

Given the circumstances, the reason for Goodwin's refusal to sign the waiver form is not apparent. The paragraph he refused to sign contained not only language dealing with making a statement without counsel present, but also language stating that he fully understood what his rights were, that he was ready and willing to answer questions, that he waived his right to remain silent, that he was given no promises or threats, and that no persuasion or coercion had been used against him. The form showed the name Goodwin had given as an alias rather than Goodwin's real name. Moreover, Goodwin had been arrested at the same time as Atkins. Given this, he had no incentive to talk with police until he learned whether Atkins was talking with them.

Other evidence is equally ambiguous. Goodwin relies on the fact that Iowa police did not interrogate him for four days, arguing that this demonstrates that Iowa police officers adhered

to his invocation of counsel. One of Lt. Walker's affidavits indicates that a refusal to sign the form would have led to there being no interrogation. Although this would appear to support Goodwin's contention that he had invoked his right to counsel, the actions of Iowa police officers in questioning Atkins tend to negate this inference. When Atkins clearly stated that he did not wish to discuss particular topics without an attorney present, that statement did not prevent police officers from again questioning Atkins regarding those topics. Thus, the evidence also supports the conclusion that Iowa police did not interrogate Goodwin on January 17 simply because he refused to sign the waiver form and refused to talk.

Goodwin asserts that because Iowa police were actively investigating the burglaries Goodwin and Atkins were suspected of committing, their failure to interrogate Goodwin over a four-day period demonstrates he had invoked his right to counsel. Again, although such a conclusion is possible, it is not mandated by the evidence. At this stage, any number of possible reasons, each perfectly consistent with normal police procedure, can be given for why Goodwin was not interrogated. For example, the record provides the district court with ample support for the conclusion that police were occupied with obtaining physical evidence of Goodwin's and Atkins's involvement in the burglaries they were suspected of committing.

As Goodwin acknowledges, much of the evidence he relies upon

11

is circumstantial. His own descriptions of the events at the time are the sole forms of direct evidence. Here, it is apparent that the district court made a credibility determination, and concluded that Goodwin's statements could not be given much, if any, weight. It was entitled to do so. See Tyler, 391 F.2d at 995 ("Credibility is for the trier of facts and the uncontradicted testimony of a witness does not have to be accepted." (citing Hawk v. Olson, 326 U.S. 271, 278 (1945))). Under the Federal Rules, we must give "due regard . . . to the opportunity of the trial court to judge of the credibility of the witnesses." FED. R. CIV. P. 52(a); see also Coury v. Prot, 85 F.3d 244, 254 (5th Cir. 1996) ("The burden of showing that the findings of the district court are clearly erroneous is heavier if the credibility of witnesses is a factor in the trial court's decision."). Thus, we cannot lightly reverse the district court's determination. The record provides us with little reason to do so. Taking into consideration each of Goodwin's descriptions of the relevant events in Iowa that are contained in the record, and the fact that those descriptions vary in significant respects, we are left with the conclusion that the district court's finding is not clearly erroneous.

III.  INEFFECTIVE ASSISTANCE OF COUNSEL

In addition to reviewing the district court's factual findings, Goodwin argues that we should revisit an ineffective-

12

assistance-of-counsel claim this panel decided in <u>Goodwin</u> and should order that he be given a new direct appeal.  In <u>Goodwin</u>, we relied on controlling circuit precedent and portions of the Supreme Court's reasoning in <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993), to hold that Goodwin was not entitled to relief on his claim that his counsel on direct appeal was constitutionally ineffective because he had failed to challenge the trial court's refusal to modify its Texas Code of Criminal Procedure art. 38.23 instruction in the manner Goodwin requested.  <u>See</u> <u>Goodwin</u>, 132 F.3d at 174.  According to Goodwin, we may revisit this issue by recognizing the applicability of an exception to the law-of-the-case doctrine.

Under the law-of-the-case doctrine, "an appellate court's decision of a legal issue, whether explicitly or by necessary implication, establishes the law of the case and must be followed in all subsequent proceedings in the same case."  <u>Carnival Leisure Indus., Ltd. v. Aubin</u>, 53 F.3d 716, 718-19 (5th Cir. 1995).  Because Goodwin requests that we reconsider our own decision, application of this doctrine is discretionary.  <u>See</u> <u>Perillo v. Johnson</u>, 205 F.3d 775, 780-81 (5th Cir. 2000).  In general, the doctrine will be applied, and a request to revisit a prior decision will be declined, unless "(i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly

13

erroneous and would work . . . manifest injustice." Free v. Abbott Lab., Inc., 164 F.3d 270, 272 (5th Cir. 1999) (internal quotation marks omitted).

Goodwin argues that the second exception applies here. He contends that the Supreme Court's decision in Williams v. Taylor, 120 S. Ct. 1495 (2000), effectively rejected the analysis we conducted in Goodwin, and that application of the proper analysis would result in our reaching a different conclusion.[5] As a result, Goodwin further asserts that failure to revisit his ineffective-assistance-of-counsel claim "would work a manifest injustice." Agostini v. Felton, 521 U.S. 203, 236 (1997) (internal quotation marks omitted). Given the procedural posture of this case, however, we must first assess whether our ability to reconsider Goodwin's ineffective-assistance-of-counsel claim is foreclosed by the language of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, and by the Supreme Court's habeas jurisprudence.

Our decision in Goodwin vacated only that portion of the district court's judgment that dealt with Goodwin's Fifth Amendment right-to-counsel claim and otherwise affirmed that judgment. See Goodwin, 132 F.3d at 192. Goodwin is before us

---

[5]  The Supreme Court's decision in Williams was announced after the district court issued its judgment with respect to Goodwin's Fifth Amendment claim. Thus, this is the first time Goodwin presents his argument that the Supreme Court's Williams decision makes applicable an exception to the law-of-the-case doctrine and allows his ineffective-assistance-of-counsel claim to be revisited.

14

because the district court, on remand, again denied his application for a writ of habeas corpus but also granted a CPC. Under the Supreme Court's opinion in Slack v. McDaniel, if a petitioner initiates an appeal after the effective date of AEDPA, the right to appeal is governed by the provisions of that law. See 120 S. Ct. 1595, 1598 (2000). Goodwin filed his notice of appeal on October 8, 1999. The effect of Slack is that despite the district court's grant of a CPC, we have before us an appeal that is governed by AEDPA's § 2253. We therefore treat the CPC granted by the district court as a Certificate of Appealability ("COA") limited to the Fifth Amendment issue that was before that court. See Muniz v. Johnson, 114 F.3d 43, 45 n.1 (5th Cir. 1997) (noting that if we are confronted with a CPC in a case covered by AEDPA's § 2253(c)(3), we do not remand to the district court for a specification of the issues the CPC/COA covers when only one issue was before that court); City Pub. Serv. Bd. v. General Electric Co., 935 F.2d 78, 82 (5th Cir. 1991) ("The district court must comply with the appellate court's mandate without variance. Previously, this Court disposed of the City's negligence claims and remanded this case on the specific and narrow grounds of the implied warranty claim. The limited scope of remand precluded consideration of any other claims." (internal citations omitted)).

The operation of AEDPA's § 2253 threatens Goodwin's ability to rely on exceptions to the law-of-the-case doctrine to have his

15

ineffective-assistance-of-counsel claim revisited.  As a general matter, parties or courts typically rely on the law-of-the-case doctrine to prevent reassessment of issues already decided. Thus, a prior decision controls a court's subsequent analysis.  A decision on the applicability of the doctrine, however, presupposes that an issue controlled by the prior holding is properly before the court.  Here, only one issue related to Goodwin's petition is properly before us — the Fifth Amendment issue disposed of above.  We do not have jurisdiction over any other ground for habeas relief.[6]

To consider Goodwin's ineffective-assistance-of-counsel claim, we must identify a means of asserting jurisdiction over it.  An individual seeking to avoid the effects of an appellate court's prior decision may bring to that court a motion to recall its mandate.  See 18 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 134.23[3], at 134-60 (3d ed. 2000); 16 CHARLES ALAN WRIGHT, ET AL. FEDERAL PRACTICE & PROCEDURE: JURISDICTION 2D § 3938, at 719 (1992). Due to the circumstances of this case and the nature of Goodwin's request, we consider that request as such a motion.

---

[6] Interpreting Goodwin's request as an application for a COA does not help him.  In general, before we may consider a petitioner's application for a COA on a particular issue, that petitioner must first submit his request to the district court and have that request denied.  See, e.g., Sonnier v. Johnson, 161 F.3d 941, 946 (5th Cir. 1998) ("Compliance with the COA requirement of 28 U.S.C. § 2253(c) is jurisdictional, and the lack of a ruling on a COA in the district court causes this court to be without jurisdiction to consider the appeal.").  Without a ruling on whether a petitioner is entitled to a COA that covers a specific issue, we would dismiss without prejudice.

16

The Supreme Court has recognized that courts of appeals have an inherent power to recall their mandates, the exercise of which is subject to review for abuse of discretion. See Calderon v. Thompson, 523 U.S. 538, 549 (1998). The issue before the Thompson Court was whether the United States Court of Appeals for the Ninth Circuit abused its discretion in recalling its mandate denying habeas relief to a § 2254 petitioner. The Court determined that whether a recall of a mandate was proper under the circumstances must be evaluated "not only against standards of general application, but also against the statutory and jurisprudential limits applicable in habeas corpus cases." Id. at 553.

The Court noted that "[i]n a § 2254 case, a prisoner's motion to recall the mandate on the basis of the merits of the underlying decision can be regarded as a second or successive application for purposes of § 2244(b)." Id. Where a petitioner's first application for habeas relief has been denied, treating a prisoner's motion to recall the court's mandate as a successive application is necessary to prevent petitioners from evading AEDPA's bars against relitigation of previously considered claims and against litigation of claims not presented in a first application.[7] See id. Even where a decision to

---

[7] Thus, had we not remanded in Goodwin, and instead disposed of all of the claims Goodwin raised in his first petition for habeas relief, we would be required under Thompson to treat his motion to recall our mandate as a successive petition governed by § 2244(b).

17

recall a mandate is not based on a prisoner's second or successive application for relief, "a court of appeals must exercise its discretion in a manner consistent with the objects of [AEDPA]. In a habeas case, moreover, the court must be guided by the general principles underlying our habeas corpus jurisprudence." Id. at 554.[8]

The Thompson Court determined that the Ninth Circuit acted sua sponte on the basis of the petitioner's first application for habeas relief and thus that the court was not faced with a successive petition. See id. As a result, the Court had occasion to elucidate the habeas principles applicable to an appeals court's decision whether to recall its mandate under the circumstances before it. Among those principles was the respect accorded to the State's interest in the finality of convictions. See id. at 555-56. Concerning itself with cases where "a court of appeals recalls its mandate to revisit the merits of its earlier decision denying habeas relief," the Court noted that in such cases, the State's interests in finality "are all but paramount." Id. at 557. The Court concluded that "[i]n the absence of a strong showing of 'actua[l] innocen[ce],' the State's interests in actual finality outweigh the prisoner's interest in obtaining yet another opportunity for review." Id. (citation omitted) (alterations in original). The Court held

_____

[8] Significantly for the case before us, the Supreme Court looked to AEDPA's provisions despite its finding that the law did not apply to the case before it. See 523 U.S. at 554.

18

"the general rule to be that, where a federal court of appeals sua sponte recalls its mandate to revisit the merits of an earlier decision denying habeas corpus relief to a state prisoner, the court abuses its discretion unless it acts to avoid a miscarriage of justice as defined by our habeas corpus jurisprudence." Id. at 558.

The question before us is whether we should grant Goodwin's motion in order to revisit an issue we have already considered on the merits, given the existence of a Supreme Court ruling that arguably rejects the analysis we conducted.[9] Unlike Thompson, we do not face a situation in which we previously have disposed of all claims a petitioner raised in his first application. We find

---

[9] In Williams, the Supreme Court rejected the Virginia Supreme Court's application of Lockhart's "mere outcome determination" language to modify the test set forth in Strickland v. Washington, 466 U.S. 668 (1984), stating that Lockhart did not "justify a departure from a straight-forward application of Strickland when the ineffectiveness of counsel does deprive the defendant of a substantive or procedural right to which the law entitles him." Williams, 120 S. Ct. at 1513. In Goodwin, we assumed that had Goodwin's appellate counsel included the claim at issue on direct appeal, the outcome of that appeal would have been different. See 132 F.3d at 172. We then examined whether the trial court's error in rejecting Goodwin's modified instruction rendered his trial fundamentally unfair or rendered Goodwin's conviction and sentence unreliable, and determined neither was the case. See id. at 173-76. Under the Supreme Court's recent decisions in Williams and in Smith v. Robbins, 120 S. Ct. 746 (2000), our analysis, if conducted today, would be different. This is not to say, however, that under the facts of Goodwin's case, principles elucidated in Lockhart are inapplicable. Even Williams acknowledged a continuing role for Lockhart. See 120 S. Ct. at 1512. We also do not suggest here that a change in the analysis would necessarily result in our determining that Goodwin was entitled to habeas relief on his ineffective-assistance-of-counsel claim.

19

that this difference, however, is not sufficient to render the Supreme Court's Thompson reasoning wholly inapplicable to our response to Goodwin's motion. We note that but for the issue we remanded to the district court, Goodwin would be required to file a successive petition in order for his ineffective-assistance-of-counsel claim to be revisited. Unless Goodwin satisfied the requirements of 28 U.S.C. § 2244(b)(2), the claim would have to be dismissed under § 2244(b)(1). Thus, it can be said that Goodwin seeks to capitalize on the fact we remanded his case and to have us revisit his claim now in order to avoid the effects of § 2244(b).

We note as well that although the State's interest in the finality of convictions may not have acquired the "added moral dimension" that comes when federal proceedings have "run their course," Thompson, 523 U.S. at 556, that interest is not insubstantial. Given our limited remand in Goodwin, the State was entitled to consider Goodwin's other claims settled by us, and to view his Fifth Amendment right-to-counsel claim as the sole basis available for obtaining habeas relief. By recalling our mandate under the circumstances presented by this case, we reduce significantly the value of limitations Congress has imposed on the ability of prisoners to have claims subjected to multiple reviews by federal courts.

Because the same general concerns are implicated here as where all of a petitioner's claims have been disposed of, we find

20

that, given the nature and procedural posture of Goodwin's request, we must adhere to Thompson's directive that a federal court of appeals "recall[] its mandate to revisit the merits of an earlier decision denying habeas corpus relief to a state prisoner" only where it determines that such an act is required "to avoid a miscarriage of justice as defined by [the Court's] habeas corpus jurisprudence." Thompson, 523 U.S. at 558. As the Thompson Court made clear, this requires that Goodwin make a showing of actual, as opposed to legal, innocence. See id. at 559 ("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence.'" (quoting Sawyer v. Whitley, 505 U.S. 333, 339 (1992))). Goodwin has given us no reason to believe he is able to meet that standard. For example, he has provided no indication that he possesses new evidence that tends to demonstrate actual innocence. See Thompson, 523 U.S. at 559 ("'To be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." (quoting Schlup v. Delo, 513 U.S. 298, 324 (1995)). As a result, we decide not to recall our mandate in order to revisit Goodwin's ineffective-assistance-of-counsel claim.

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court. All outstanding motions are denied.

21