658 So.2d 847 (1995)
Joseph Lynn WESTBROOK, a/k/a Joseph Lynn Westbrooks
v.
State of Mississippi.
No. 92-KA-00132-SCT.
Supreme Court of Mississippi.
June 29, 1995.
Michael G. Thorne, Tupelo, for appellant.
Michael C. Moore, Atty. Gen., Jackson, Jean Smith Vaughan, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, C.J., and PITTMAN and BANKS, JJ.
PITTMAN, Justice, for the Court:

STATEMENT OF THE CASE
On February 5, 1990, Appellant was indicted by the Lee County Grand Jury on three counts of murder. At a pre-trial hearing held on February 8, 1990, Appellant entered a plea of not guilty to all three charges. On April 23, 1990, Appellant moved for a psychiatric examination, which the court granted by order dated August 27, 1990. Subsequently on January 15, 1991, Dr. Reb McMichael reported to the trial court that Appellant was "capable of assisting his attorney in preparing a defense" and that Appellant understood the nature of the charges against him. On January 30, 1992, Appellant gave a Notice of an Insanity Defense and the State responded to the defense on February 3, 1992.
A jury was impanelled and the trial proceeded on all three counts on February 3, 1992. At the close of the State's case, Appellant moved for a directed verdict, which the trial court denied. The defense proceeded with its case in chief, followed by the State calling two rebuttal witnesses and again resting. *848 The jury was instructed and retired to deliberate. During the course of the deliberations, the jury sent out a written request for the definitions of deliberate design and malice aforethought. The trial court responded by informing the jury that such a request was improper and that they could decide the case on the law and instructions given earlier. Ultimately, the jury returned with a verdict of guilty for each of the three counts. Thereafter, the trial court sentenced Appellant to serve a term of life as to Counts I, II and III, sentences to run consecutively.
On February 11, 1992, Appellant filed a motion for JNOV, or alternatively, a new trial, said motion being denied by the court that same day. Aggrieved by the verdict of the jury and by certain actions taken by the trial court, Appellant timely perfected this appeal. Appellant presents the following three issues for this Court's review:
I. THE TRIAL COURT ERRED IN ALLOWING GRUESOME AND IRRELEVANT PHOTOGRAPHS INTO EVIDENCE.
II. THE TRIAL COURT ERRED IN REFUSING DEFENDANT'S INSTRUCTIONS D-19, D-20 AND D-21, ON UNCONTROLLABLE IMPULSE AS IT RELATES TO INSANITY.
III. THE TRIAL COURT ERRED IN REFUSING THE JURY'S REQUEST FOR FURTHER INSTRUCTIONS, REGARDING MALICE AFORETHOUGHT AND DELIBERATE DESIGN.

STATEMENT OF THE FACTS
On November 15, 1989, Pamela Pearson, Carolyn Sullivan and Willis Thrasher were murdered at the Crosstown intersection, in Tupelo, Mississippi. According to the various witnesses who testified during the trial, at approximately 4 P.M. that afternoon, Joseph Lynn Westbrooks [hereinafter Appellant], stopped his white Oldsmobile vehicle behind a blue vehicle at a red light at the Crosstown intersection. Appellant then got out of his vehicle and walked to the driver's window of the car stopped directly in front of his. Thereafter, he fired shots into the car. In addition, witnesses stated that after Appellant shot into the car, he fired a fifth shell which was discharged on the ground. At that point, Appellant walked back to his vehicle and drove away.
At trial, several witnesses who observed the shootings testified and identified Appellant as the perpetrator. In addition, law enforcement officials described the scene and subsequent arrest and charging of Appellant. Finally, certain experts were proffered in order to establish the cause of death, the fact that the fingerprints taken from the shotgun were Appellant's, and that the five spent shells were fired from the shotgun that was recovered from the Appellant.
The Appellant did not take the stand or otherwise contradict the State's evidence, rather, the defense sought to establish Appellant's insanity by and through calling certain psychological experts. Dr. L.D. Hutt testified that Appellant suffered from major depression and also from a condition known as borderline personality disorder, wherein a person alternates between neurosis and psychosis and is otherwise out of touch with reality. Hutt also stated that Appellant engaged in instances of explosive, violent behavior, a symptom of the diagnosed condition. Hutt testified that Appellant's relationship with Pamela Pearson was a "major stressor," and Appellant's fear of abandonment attributed greatly to his borderline personality disorder.[1] Hutt opined that Appellant was suffering from the conditions of his mental defect on November 15, 1989, such that he was unaware of the nature and quality of his actions. In addition, Hutt stated that during the times he interviewed and observed Appellant, Appellant was in a condition whereby he could not distinguish right from wrong.
The defense also called Dr. Jan E. Kloek, who testified that on November 15, 1989, Appellant was incompetent due to the nature *849 of his condition and that Appellant at the time of the shootings, may have been in a dissociative state. Further, Kloek stated that Appellant's mental condition pre-empted him from understanding or knowing the nature and quality of his actions and from distinguishing right from wrong.
The State on rebuttal, called Dr. Reb McMichael, who in a written report, opined that Appellant was mentally fit to assist his counsel with the preparation of his defense. McMichael ultimately opined that he believed that Appellant was sane, knew what he was doing and was aware that his actions were wrong at the time the shootings occurred.
The State also called Dr. Helen Robertson, employed as a clinical psychologist for the State Mental Hospital. Robertson testified that she observed Appellant while he was housed at the state hospital, and it was her opinion that he was "able to understand and appreciate the nature and quality of his actions on that day." Robertson discussed the basis of her opinion, including the interviews, tests performed and case history and also opined that Appellant was not psychotic at the time of the shootings on November 15, 1989.
The jury returned a verdict of guilty on all three counts. This appeal follows.

RELEVANT LAW AND ANALYSIS

I. DID THE TRIAL COURT ERRONEOUSLY ALLOW GRUESOME AND IRRELEVANT PHOTOGRAPHS TO BE ADMITTED INTO EVIDENCE?
During trial, Dr. Lloyd White, an expert called by the State, testified that he performed the autopsies and that all three victims died as a result of gunshot wounds. Prior to Dr. White taking the stand, the defense objected to certain photographs comprising Exhibits 13, 14 and 15 on the grounds that the Defendant had not contradicted or denied the killings and that the corpus delicti had already been established. The trial court overruled defense's objection to these photographs. During the course of White's testimony, the State moved to have these photographs admitted to corroborate White's testimony. The defense again objected; however, the trial court allowed the photographs, comprising State's Exhibits "13", "14", and "15" to be admitted into evidence.
On appeal, Appellant contended that the trial court erred in admitting Exhibits 13, 14 and 15 (a photograph of each of the three victims) into evidence and that such photographs were unduly prejudicial and served only to inflame the jury. Appellant further argues that he never contradicted or denied the killings; therefore, the photographs were not necessary to the proof of the State's case.
Photographs have evidentiary value where they: 1) aid in describing the circumstances of the killing and the corpus delicti; Williams v. State, 354 So.2d 266 (Miss. 1978); 2) where they describe the location of the body and cause of death; Ashley v. State, 423 So.2d 1311 (Miss. 1982); and 3) where they supplement or clarify witness testimony. Hughes v. State, 401 So.2d 1100 (Miss. 1981).
This Court has determined that the admissibility of photographs rests within the sound discretion of the trial judge. Griffin v. State, 557 So.2d 542 (Miss. 1990); see also Mackbee v. State, 575 So.2d 16, 31 (Miss. 1990); Boyd v. State, 523 So.2d 1037, 1039 (Miss. 1988); Smith v. State, 419 So.2d 563, 567 (Miss. 1982), cert. denied 460 U.S. 1047, 103 S.Ct. 1449, 75 L.Ed.2d 803 (1983). Furthermore, the decision of such trial judge will not be disturbed absent a showing of an abuse of discretion. Herring v. State, 374 So.2d 784, 789 (Miss. 1979); see also Cabello v. State, 471 So.2d 332, 341 (Miss. 1985), cert. denied 476 U.S. 1164, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986). Such "discretion of the trial judge runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and the extenuation of probative value." Hart v. State, 637 So.2d 1329, 1335 (Miss. 1994) (quoting Williams v. State, 544 So.2d 782, 785 (Miss. 1987)).
The photographs in the present case were propounded by the State as evidence for and in connection with establishing the cause of death, to corroborate medical testimony and, additionally, served the following important evidentiary purposes: (1) they identified the victims; (2) they showed the effect on the deceased resulting from the gunshot wounds *850 inflicted; and (3) they corroborated certain testimony of the State's witnesses, especially that of Dr. White. Had the photographs in the case sub judice comprised the only evidence, we could look more circumspect. However, because of the great weight of evidence adduced, including numerous eyewitnesses who testified, the fact that Appellant did not deny committing the crime and the expert testimony, the photographs were properly admitted.

II. DID THE TRIAL COURT ERR IN REFUSING DEFENDANT'S INSTRUCTIONS D-19, D-20 AND D-21, ON UNCONTROLLABLE IMPULSE AS IT RELATES TO INSANITY?
Appellant next contends that because the defense of "uncontrollable impulse" was available to him, the trial court erred in refusing to submit Instructions D-19, D-20 and D-21 for the jury's consideration. Contested instruction D-19 reads[2]:
You are instructed that if you believe from the evidence that, in Count I, Joseph Lynn Westbrooks shot the deceased as a sudden uncontrollable impulse and that this impulse arose from a mental disease existing to such a high degree as to overwhelm the reason, judgment and conscience of Joseph Lynn Westbrooks so that he was unable to distinguish right from wrong, then you shall find Joseph Lynn Westbrooks not guilty in Count I by reason of insanity.
The trial court refused these three instructions, stating, in part, that uncontrollable impulse was not the law in this State.
Appellant argues that his two medical experts provided the foundation for these instructions and that the evidence fully supported the uncontrollable impulse theory.
The law surrounding the issue of the insanity defense and appropriate jury instructions has repeatedly been considered and discussed by this Court. In Edmond v. State, 312 So.2d 702 (Miss. 1975), this Court held in relevant part:
This Court has recently (as it has done many times in the past), rejected the argument that one may escape responsibility for criminal acts done under some so-called uncontrollable urge or impulse. [citations omitted] Admittedly, the M'Naghten test of criminal responsibility may not be a perfect means to test sanity of one charged with [sic] crime, but no better solution has been offered. Thus the test in this state remains the ability of the accused to realize and appreciate the nature and quality of his deeds when committed and the ability to distinguish between right and wrong.
Id. at 704. [emphasis added].
This Court later refined and reaffirmed this principal in Hill v. State, 339 So.2d 1382 (Miss. 1976):
We are urged to abandon the M'Naghten Rule as to the determination of criminal responsibility. In place of the M'Naghten Rule, we are asked to accept and adopt the rule set forth in 4.01 of the American Law Institute's Model Penal Code (1962). That section would relieve a defendant of responsibility for criminal conduct:
... if at the time of such conduct as a result of a mental disease or defect he lacks substantial capacity to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law.
Such a rule would provide for the acquittal of those who commit criminal acts and assert that they did such act or acts because of so-called uncontrollable urges or impulse. Though the M'Naghten Rule may not be a perfect means to test criminal responsibility, .. . it is the safest of the rules proposed.
Id. at 1385.
Based on the applicable law and the record before this Court, the denial of D-19, D-20 and D-21 does not amount to reversible error. The jury was given instruction D-18, which correctly stated the law surrounding an insanity defense. Because no reversible error occurred, we affirm this issue.

*851 III. DID THE TRIAL COURT ERR IN REFUSING THE JURY'S REQUEST FOR FURTHER INSTRUCTIONS REGARDING MALICE AFORETHOUGHT AND DELIBERATE DESIGN?

Appellant lastly asserts that the trial court erred in refusing to further instruct the jury as to the definitions of malice aforethought and deliberate design. After the jury sent out a written request for these definitions, the trial court refused and informed the jury via a note sent back in, that such a request "would not be proper" for response. Appellant asserts that the jury was confused in trying to determine whether malice aforethought or deliberate design was present and by the failure of the trial judge to give a proper instruction, as requested by the jury, together with his incorrect statement of the law that it would not be proper for him to respond to their question could only have been more confusing.
Rule 5.14 of Uniform Criminal Rule of Circuit Court Practice states:
If the jury, after they retire for deliberation, desires to be informed of any point of law, the court shall instruct the jury to reduce its question to writing and the court in its discretion may then grant additional written instructions in response to the jury's request. [emphasis added].
Such discretion was discussed by this Court in Hooten v. State, 492 So.2d 948 (Miss. 1986). This Court held in relevant part:
Our inquiry, then is not whether the circuit judge ruled contrary to what one of us might have ruled, not whether he was `right' or `wrong' in our view, but whether he abused his discretion. And, unless the trial court based his decision on an erroneous view of the law, [citation omitted], we are not authorized to reverse for an abuse of discretion unless we find it was `arbitrary and clearly erroneous.' [citation omitted].
Hooten v. State, 492 So.2d at 950.
Rule 5.14, together with this Court's earlier decision in Hooten v. State, 492 So.2d 948, 950 (Miss. 1986), support the decision of the trial court. The trial court was well within its discretion in opting not to further instruct the jury on malice aforethought and deliberate design. Therefore, no reversible error occurred and, as such, we affirm.

CONCLUSION
As to Appellant's first assignment of error, based on the standard utilized for considering issues concerning gruesome photographs, the trial court was correct in its ruling. While all photographs of victims are ostensibly gruesome, the admission of Exhibits 1315 is not in violation of Rule 403.
Appellant's second assignment of error is also without merit, as the instructions given correctly informed the jury of the law surrounding Appellant's insanity defense.
Finally, we affirm Appellant's third assignment as the trial court acted within its discretion in refusing to further instruct the jury on the definitions of deliberate design and malice aforethought.
Finding no reversible error occurred, we affirm the judgment and sentence of the Lee County Circuit Court.
CONVICTION OF MURDER (THREE COUNTS) AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SENTENCE IN COUNT II IS TO RUN CONSECUTIVELY WITH COUNT I. SENTENCE IN COUNT III IS TO RUN CONSECUTIVELY WITH COUNT I AND COUNT II.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SMITH, J., concur.
SULLIVAN, J., concurs in part.
BANKS, J., concurs in part with separate written opinion joined by SULLIVAN, J.
DAN M. LEE, P.J., joins in part.
McRAE, J., concurs in result only.
JAMES L. ROBERTS, Jr., J., not participating.
*852 BANKS, Justice, concurring in part:
I concur in the result reached by the majority. I write separately to note my disagreement with what the opinion says about the admission of the photographs. I agree that the admission of the photographs was harmless error in this case. I do not agree that the photos served any important evidentiary purpose or that they were properly admitted.
SULLIVAN, J., joins this opinion.
DAN M. LEE, P.J., joins in part.
NOTES
[1] The record indicates that Appellant, prior to the shooting in November 1989, had assaulted Pamela Pearson.
[2] Instructions D-20 and D-21 are virtually identical to D-19 except for the count indication.