McMILLIN, C.J.,
for the Court:
¶ 1. Donald Ray Williams was convicted by a jury in the Circuit Court of Hinds County of murder for killing Cynthia Dixon. Williams has appealed his conviction, raising two issues. First, Williams asserts that the trial court committed reversible error in admitting into evidence two photographs of the victim’s body taken at the crime scene. Secondly, Williams urges this Court to conclude that the verdict was against the overwhelming weight of the evidence. We find these issues to be without merit and, therefore, we affirm the conviction.
I.
Facts
¶ 2. Donald Williams and Cynthia Dixon had a seven year romantic relationship that had proven to be tumultuous. On the evening of May 14, 1997, Dixon was at her mother’s home in Utica where she had planned to spend the night. It was not uncommon for Williams and Dixon to drive each other’s vehicles, and on this evening Dixon had driven Williams’s car to her mother’s residence. Williams, intending to retrieve his vehicle, drove to the home in *310 Dixon’s car and requested that Dixon surrender the keys to his vehicle. Dixon complied with his request; however, when Dixon asked Williams to reciprocate and surrender the keys to her vehicle, a disturbance broke out for reasons that are difficult to glean from the record. According to the State’s evidence, at some point Williams pulled a gun and began to chase Dixon through the house. Dixon locked herself in a bathroom for a time, but Williams was able to coax her out. As Dixon left the bathroom and was walking down a hall, Williams fell in behind her and, at some point, shot her in the back. Dixon fell to the floor and Williams proceeded to fire four additional shots into her body. Dixon died as a result of her injuries.
¶ 3. Williams, testifying in his own defense, admitted shooting Dixon; however, he claimed that, at most, he was only guilty of manslaughter because the killing was not a premeditated act. Williams claimed that his possession of a gun was merely a fortuitous event. He explained that it was his custom to travel with a gun, and that he had put the gun in his pocket on arrival at the home only because he knew he was going to be exchanging cars and he did not want to leave the pistol in Dixon’s car where Dixon’s young son might discover it and accidentally injure himself or someone else. Williams claims that, during the dispute over car keys, Dixon’s mother began to push and shove him. He said that he had been drinking before arriving at the home and that his intoxication coupled with the aggressive nature of Dixon’s mother’s behavior simply caused him to lose his self-control. It was only at that point, he contends, that he pulled the pistol out of his pocket and started firing. His contention is that, therefore, at worst his crime is that of “heat of passion” manslaughter.
¶ 4. Williams was, in fact, given a manslaughter instruction by the trial court. However, the jury found Williams guilty of murder. Williams’s post-conviction motions for relief were unsuccessful and this appeal ensued.
II.
The Admission of Photographs
¶ 5. The trial court admitted four photographs into evidence, only two of which Williams complains about on appeal. Both photographs complained of on appeal were taken at the crime scene. One shows Dixon lying face down in a pool of blood, and the other is a close-up picture of Dixon’s arm with someone’s hand pointing to the gunshot wounds. Williams asserts that the pictures were erroneously admitted into evidence because they were cumulative of the testimony of the pathologist, who had already described Dixon’s wounds for the jury. Because of the gruesome nature of the photographs, Williams contends that, once other competent evidence was introduced to inform the jury of the nature and extent of Dixon’s wounds, the photographs should have been held to fail a Rule 403 balancing test, because “their probative value [was] substantially outweighed by the danger of unfair prejudice....” M.R.E. 403.
¶ 6. The decision to admit or exclude evidence is a matter entrusted to the sound discretion of the trial court. Underwood v. State, 708 So.2d 18(¶ 44) (Miss.1998). For purposes of this discussion, it can be said that all relevant evidence is admissible unless its introduction is prohibited by the Mississippi Rules of Evidence. M.R.E. 402. Evidence is relevant if it makes “the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” M.R.E. 401. The Mississippi Supreme Court has held that “[p]hotographs have evidentiary value where they ... supplement or clarify witness testimony.” Westbrook v. State, 658 So.2d 847, 849 (Miss.1995). The supreme court has traditionally been reluctant to reverse a conviction based on the admission of photographs *311 “regardless of the gruesomeness, repetitiveness, and the extenuation of probative value.” Id. Given such wide discretion, a trial court may not be reversed on appeal for admitting photographs into evidence unless it appears that the court has manifestly abused its discretion. Id.
¶ 7. In this case, the pathologist who performed Dixon’s autopsy used both of these pictures to describe Dixon’s injuries to the jury and to explain the position of Dixon’s body at the time the shots were fired. This would appear to be a perfectly acceptable method of presenting evidence to the jury concerning the manner in which Dixon met her death and seems entirely pertinent to the issues of fact that the jury was expected to resolve. Conceding that any graphic representation of a human being recently killed by violence cannot avoid some measure of gruesomeness, our inspection of the photographs suggests nothing extraordinary in their composition that would unduly shock the members of the jury or provoke an unwarranted measure of revulsion that might cause them to abandon their objective view of the evidence. Keeping in mind our limited standard of review, we find the issue of the admissibility of these photographs to be without merit.
III.
Weight of the Evidence
¶ 8. As his second assignment of error, Williams asserts that the jury’s verdict was against the weight of the evidence, thereby entitling him to a new trial. He argues that, because he did not go to Dixon’s mother’s home with the deliberate design to kill Dixon, he should, at worst, have been found guilty of “heat of passion” manslaughter. Williams argues that the provocation of Dixon’s mother’s assaultive behavior combined with the effects of alcohol caused him to go into an uncontrollable rage, and it was only in the grips of that rage that he acted to kill Dixon.
¶ 9. Procedurally, in arguing this issue, Williams is challenging the trial court’s decision to deny his new trial motion. The decision to grant a new trial is a matter entrusted to the sound discretion of the trial court. McClain v. State, 625 So.2d 774, 781 (Miss.1993). Unless we are convinced that the trial court’s decision to deny the motion resulted in an unconscionable injustice, our duty is to affirm. Watson v. State, 722 So.2d 475 (¶ 23) (Miss.1998). In reviewing a challenge that the verdict is against the overwhelming weight of the evidence, this Court accepts as true evidence which supports the verdict. Id. at (¶ 24). We keep in mind that determining what weight and credibility to give to the evidence is the province of the jury. Id.
¶ 10. The jury was instructed both on the State’s theory that Williams killed Dixon with deliberate design and on Williams’s theory that the killing was done in the heat of passion and thus, could not rise to a greater crime than manslaughter. The jury chose to reject Williams’s theory and accept the State’s. We do not find that verdict to be against the overwhelming weight of the evidence. Williams’s argument that he did not travel to the Dixon home for the purpose of murdering Dixon misapprehends the nature of the crime of murder. There is no necessity that the intention to purposely kill another must exist for any particular period of time. The supreme court has held that deliberate design “may be inferred from use of a deadly weapon.” Carter v. State, 722 So.2d 1258 (¶ 21) (Miss.1998). There was evidence presented by the State that indicated that Williams fired the shots that fatally wounded Dixon at a time when she was walking ahead of him down the hall. Nothing in the State’s version of events suggests that Dixon, or anyone else in the home, had done anything to provoke Williams’s unreasoned passion to the degree that his actions could be seen as something less than a wilful decision to shoot his victim. Whether he had, in fact, formed that intent prior to arriving at the *312 home is largely irrelevant. Neither can proof that Williams may have been intoxicated to some degree be used to excuse his behavior or render it less culpable under the law. Smith v. State, 445 So.2d 227, 231 (Miss.1984). Concluding that there was a substantial body of evidence in this case to suggest that Williams purposely and by deliberate design killed Dixon by intentionally firing repeated gunshots into her body at a time when he was not operating under an overmastering rage, we find Williams’s claim that this verdict was against the weight of the evidence to be without merit.
¶ 11. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.