**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

**No. 00-60293**

---

**TRACY ALAN HANSEN,**

**Petitioner-Appellant,**

**versus**

**ROBERT ARMSTRONG, Superintendent, Mississippi State**
**Penitentiary; ROBERT L. JOHNSON, Commissioner, Mississippi**
**Department of Corrections,**

**Respondents-Appellees.**

---

**Appeal from the United States District Court**
**for the Southern District of Mississippi**
**(1:96-CV-60)**

---

November 6, 2001

Before SMITH, BARKSDALE, and PARKER, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:[1]

At issue is whether Tracy Alan Hansen, a state prisoner sentenced to death for capital murder, satisfies the standards requisite to being allowed to appeal the district court's denial of 28 U.S.C. § 2254 habeas relief. Hansen requests the requisite certificate of appealability (COA) for each of several issues, concerning his conviction and sentence. **DENIED.**

---

[1]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

On 10 April 1987, having left Florida earlier that day, Hansen and Anita Louise Krecic were traveling on Interstate 10 in Harrison County, Mississippi, in a blue Lincoln (town car); Hansen was driving. Observing erratic driving and speeding, Mississippi Highway Safety Patrol Officer (State Trooper) David Bruce Ladner signaled for Hansen to pull over. Officer Ladner requested to search the vehicle. Hansen and Krecic, using fictitious names, signed a consent to search form.

Subsequently, Hansen fired a .38 caliber pistol at Officer Ladner. After the Officer took evasive action, Hansen fired twice more at close range, each shot striking the Officer in the back. The Officer managed to reach the median, and a passing motorist took him to a hospital; he died approximately 31 hours later.

Because the Officer had taken the keys to their vehicle, Hansen and Krecic took the Officer's patrol car to an I-10 exit. They immediately pulled over, and took, a Ford Ranger driven by Daisy Morgan, leaving her there.

After unsuccessfully seeking transportation to New Orleans, Louisiana, Hansen and Krecic reached a home in Hancock County, Mississippi. Persons there agreed to take Hansen and Krecic to Waveland, Mississippi; en route, they were stopped by State Troopers. Hansen and Krecic were taken into custody. A further

description concerning the incident, including other witnesses, appears *infra* in part II.E. (Confrontation Clause claim).

In 1987, Hansen was found guilty in a capital murder trial. After the penalty hearing, he was sentenced to death because the jury found: the capital offense was especially heinous, atrocious, or cruel, and was committed for the purpose of avoiding or preventing lawful arrest, or effecting an escape from custody; and these aggravating circumstances outweighed the mitigating. *See* MISS. CODE ANN. § 99-19-101(3) (jury must find sufficient aggravating circumstances, enumerated in subsection (5) of statute, not outweighed by mitigating circumstances, subsection (6)).

Through an extremely comprehensive opinion covering the approximately 45 issues raised on direct appeal, the Mississippi Supreme Court affirmed. **Hansen v. State**, 592 So. 2d 114 (Miss. 1991). Review was denied by the Supreme Court of the United States. **Hansen v. Mississippi**, 504 U.S. 921 (1992).

Hansen sought post-conviction relief in the Mississippi Supreme Court; relief was denied, except for one issue concerning the method of execution. **Hansen v. State**, 649 So. 2d 1256 (Miss. 1994). Hansen had been sentenced erroneously to death by lethal gas; the case was remanded to the circuit court for modification of the sentence to death by lethal injection. **Id.** at 1260. Review was again denied by the Supreme Court of the United States. **Hansen v. Mississippi**, 516 U.S. 986 (1995).

Hansen presented 17 issues in his July 1996 federal habeas petition, adding another by supplement in early 1997. In its detailed opinion, the district court concluded five claims were procedurally barred; in addition, it considered, and rejected, each claim on the merits. *Hansen v. Puckett*, No. 1:96cv60BrR (S.D. Miss. 5 Aug. 1999) (unpublished) (*Hansen-USDC*).

## II.

Hansen having filed his federal habeas petition after the 24 April 1996 effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), that Act applies. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Accordingly, Hansen must obtain a COA in order to appeal the denial of habeas relief. 28 U.S.C. § 2253(c)(1)(A). To obtain a COA, he must make "a substantial showing of the denial of a constitutional right". *Id.* § 2253(c)(2). In general, Hansen must demonstrate "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further". *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). Restated, for claims denied on the merits, Hansen must show "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong". *Id.* But, for relief denied on procedural grounds, Hansen must not only make the showing described above concerning the merits of a claim, but also must

4

show "jurists of reason would find it debatable whether the district court was correct in its procedural ruling". ***Id.***

Obviously, "the determination of whether a COA should issue must be made by viewing [Hansen]'s arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)". ***Barrientes v. Johnson***, 221 F.3d 741, 772 (5th Cir. 2000), *cert. dismissed*, 121 S. Ct. 902 (2001). In that regard, concerning § 2254(d), when a claim has been adjudicated on the merits in state court, a federal habeas court must defer to that decision unless it "[is] *contrary to*, or involve[s] an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or ... [is] based on an unreasonable determination of the facts in [the] light of the evidence presented in the State court proceeding". 28 U.S.C. § 2254(d)(1) & (2) (emphasis added).

For the § 2254 "contrary to" prong, a decision is "contrary to [] clearly established Federal law, as determined by the Supreme Court ... if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts". ***Williams v. Taylor***, 529 U.S. 362, 412-13 (2000). And, for the § 2254 "unreasonable application of" prong, a decision "involve[s] an unreasonable application of [] clearly established Federal law, as determined by the Supreme Court

5

... if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case". *Id.* A state court's findings of fact are presumed correct unless the petitioner rebuts that presumption by "clear and convincing evidence". 28 U.S.C. § 2254(e)(1).

Hansen seeks a COA for each of six claims. He maintains the district court: (1) applied the wrong standard of review; (2) erred in holding he was not denied effective assistance of counsel at the penalty phase; (3) erred in concluding his *Brady* claim and concomitant claim for resulting ineffective assistance of counsel were procedurally barred and, in the alternative, without merit; (4) misapplied *Skipper v. South Carolina*, 476 U.S. 1 (1986), in upholding the exclusion of a social worker's testimony at the penalty phase; and (5) applied the wrong legal standard in concluding a Confrontation Clause violation was harmless error. For his sixth claim, Hansen contends he was entitled to an evidentiary hearing in district court.

A.

Hansen asserts that, in two respects, the district court applied erroneous standards of review.

1.

First, Hansen contends the court erred by applying the "reasonable jurists" standard of review announced in *Drinkard v.*

6

*Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), a standard later rejected in *Williams,* 529 U.S. at 410.

The district court referred in a footnote to the *Drinkard* "reasonable jurists" standard. *Hansen-USDC*, at 7 n.1. That standard, however, was not mentioned again or made part of the court's analysis. Therefore, although the district court erred by citing *Drinkard*, the error was harmless, and, thus, not a sufficient basis upon which to grant a COA. *Moore v. Johnson*, 225 F.3d 495, 500 n.1 (5th Cir. 2000), *cert. denied*, 121 S. Ct. 1420 (2001).

2.

Hansen contends the district court also erred by applying § 2254(d)(1) to his ineffective assistance claims because, according to Hansen, the Mississippi Supreme Court did not adjudicate those claims on the merits, but summarily denied them, erroneously applying the rule of collateral estoppel and failing to remand for an evidentiary hearing or to make findings of fact.

"'Resolution on the merits' is a term of art in the habeas context that refers not to the quality of a court's review of claims, but rather to the court's disposition of the case — whether substantive or procedural." *Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997). To determine whether a resolution was on the merits, we consider: what the state court has done in similar

7

cases; whether the history of the case suggests the state court was aware of any procedural grounds; and whether the state court's opinion suggests reliance upon procedural grounds. *Id.*

The Mississippi Supreme Court found Hansen's ineffective assistance claims meritless. *Hansen*, 649 So. 2d at 1257. The court stated the issue was raised and rejected on direct appeal (there, the issue concerned an ineffective assistance claim premised on claimed inadequate statutory attorney's fees); it then agreed with, and quoted, the ruling on direct appeal that "counsel have pulled out all the stops, well exceeding the *Strickland* standards". *Id.* at 1259 (quoting *Hansen*, 592 So. 2d at 153; emphasis omitted). Next, the court stated: "Again, we conclude there is *no merit* to these issues". *Id.* (emphasis added).

Hansen's ineffective assistance claims were resolved on the merits by the state court. Therefore, the district court did not err by applying § 2254(d)(1) to them.

B.

Hansen maintains his trial counsel was ineffective by failing at the penalty phase: to investigate mitigating evidence; and to present psychological evidence concerning statutory mitigating circumstances. *See* MISS. CODE ANN. § 99-19-101(6).

To establish ineffective assistance of counsel, Hansen must satisfy the well known two prong standard: counsel's performance was deficient, falling below an objective standard of

8

reasonableness; and this deficient performance prejudiced the defense, such that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the trial would have been different. *E.g., **Strickland v. Washington***, 466 U.S. 668, 687-88, 694 (1984).

1.

Regarding the claimed failure to investigate mitigating evidence, Hansen maintains counsel failed to prepare witnesses and to conduct an adequate investigation that would have uncovered evidence of the mental and physical abuse inflicted on Hansen during his childhood (childhood abuse).[2]

The district court found counsel's investigation was not deficient; affording the required "heavy measure of deference" to counsel's strategic choices, it concluded: "even if he made a less than complete investigation, the attorney's reasonable professional judgments support the limitations on investigation". **Hansen-USDC,** at 19. The court explained: most of the seven mitigating witnesses testified about Hansen's childhood abuse; and any missing

---

[2]Hansen also asserts such an investigation could have uncovered additional mitigating evidence; in the district court, however, he contended only that the investigation would reveal evidence of his childhood abuse. We do not have jurisdiction to consider aspects not presented in district court. *See, e.g.,* ***Goodwin v. Johnson***, 224 F.3d 450, 459 n.6 (5th Cir. 2000) ("before we may consider a petitioner's application for a COA on a particular issue, that petitioner must first submit his request to the district court and have that request denied"), *cert. denied*, 121 S. Ct. 874 (2001).

details were not sufficient to render counsel's investigation unreasonable. *Id.* at 20.

The district court also concluded that Hansen failed to show his counsel did not adequately interview these witnesses. *Id.* It explained: although, in his affidavit, Fred Weist (a social worker from a Florida prison where Hansen had been incarcerated) stated he never spoke to Hansen's counsel about his testimony, he did not purport to have knowledge of Hansen's childhood; and, the other witnesses' affidavits show Hansen's counsel interviewed them before they testified. *Id.*; *cf.* *Leatherwood v. State*, 473 So. 2d 964, 970 (Miss. 1985) (defense counsel did not interview witnesses before they testified).

In his habeas affidavit, Hansen's trial counsel stated he "was not able to put forward [his] best effort for the sentencing phase" or "conduct in depth interviews of sentencing phase witnesses". The Sixth Amendment requires counsel to provide "reasonable professional services". *Hansen-USDC*, at 20-21 (quoting *Strickland*, 466 U.S. at 687-88). The district court concluded: Hansen received such services during the penalty phase; and the testimony of witnesses not called would have been corroborative and largely cumulative. *Id.* at 21.

Hansen has not shown reasonable jurists would disagree with the district court. Due to time pressure (his objection to the trial date was overruled; sentencing began the day after the

10

liability phase) and lack of investigative assistance (his request for an investigator was denied), Hansen's attorney was limited in his investigation, learning about Hansen's childhood abuse from Hansen and relying upon Hansen to identify potential witnesses. *See* **Strickland**, 466 U.S. at 691 ("[W]hen the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether".); *cf.* **Armstrong v. Dugger**, 833 F.2d 1430, 1432-33 (11th Cir. 1987) (preparation for penalty phase consisted of meeting once with petitioner, his mother and stepfather, and speaking with his parole officer, the sole mitigating witness; counsel explained lack of preparation not strategic but result of inexperience).

And, as noted, Hansen's attorney interviewed and called seven of those witnesses in mitigation, most of whom testified about Hansen's childhood abuse. For example, in response to questioning by Hansen's counsel, Hansen's father testified that Hansen's mother (who also testified) "took her unhappiness with [Hansen's father] out on [their] children". When asked how she accomplished that, Hansen's father answered: "The kids had severe whippings with leather belts or sticks, whatever might be close".

In the alternative, the district court concluded trial counsel's claimed deficiencies did not prejudice Hansen. **Hansen-**

11

*USDC*, at 22.  It goes without saying that, because Hansen has not shown reasonable jurists would find debatable or wrong the district court's assessment of *Strickland*'s deficiency prong, we need not reach the prejudice prong.

2.

Hansen also claims trial counsel was ineffective for failing to present psychological mitigating evidence.  He asserts counsel did not direct Dr. Matherne, the independent psychologist appointed to evaluate Hansen, to the statutory mitigating circumstances (for example, that Hansen committed the offense while "under the influence of extreme mental or emotional disturbance" or "under extreme duress *or under the substantial domination of another person*", as discussed *infra*; or that Hansen's capacity "to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired", *see* MISS. CODE ANN. § 99-19-101(6)(b), (e)-(f) (emphasis added)).  Hansen also asserts counsel failed to direct Dr. Matherne to provide him with any information about Hansen, and ignored mitigating evidence that Dr. Matherne could have developed regarding Hansen's personality and the likelihood he was under the substantial domination of Krecic.[3]

---

[3]Hansen also asserts, for the first time on appeal, that counsel was ineffective for failing to seek prison records that would have revealed Hansen's prescriptions for psychiatric medications.  For the reasons previously stated, we cannot consider this new issue.  *Goodwin*, 224 F.3d at 459 n.6.

12

The district court noted: trial counsel reviewed the psychological report, in which Dr. Matherne concluded that, regarding Hansen's mental and emotional capacity at the time of the alleged offense, Hansen satisfied the **M'Naghten** standard, *see* **Westbrook v. State**, 658 So. 2d 847, 850 (Miss. 1995) (ability to realize and appreciate nature and quality of deeds when committed and distinguish between right and wrong); and, therefore, trial counsel "felt it was not in [Hansen's] best interest that Dr. Matherne be called in this matter". The district court also noted: trial counsel explained he "did not specifically direct Dr. Matherne to the mitigating circumstances listed in the capital sentencing statute", but "[i]f Dr. Matherne had reported that he could testify in support of mitigation, [he] would have called him as a witness in the sentencing phase". **Hansen-USDC**, at 23-24.

The district court concluded that, although trial counsel complained that time limitations deprived him of a thorough investigation of mitigating psychological factors, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation". **Id.** at 24 (quoting **Loyd v. Whitley**, 977 F.2d 149, 158 (5th Cir. 1992), *cert. denied*, 508 U.S. 911 (1993), and **Strickland**, 466 U.S. at 681 ("[l]imitations of time and money ... may force early strategic choices, often based solely on conversations with the defendant and a review of the

13

prosecution's evidence")).  "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence", *id.* (quoting **Strickland**, 466 U.S. at 689), where, as here, the defense strategy was ultimately unsuccessful.  That strategy was *urging jurors to vote for life imprisonment without parole* (counsel advised the jury in closing argument for the penalty phase that Hansen confessed his prior convictions to the trial court and wanted to be sentenced without the possibility of parole), for which counsel began to prepare well in advance of trial, including moving for the court's permission to introduce evidence of Hansen's habitual criminal status.  *Cf.* **Williams**, 529 U.S. at 395 (counsel did not prepare for sentencing until week before trial).[4]

The district court also determined that Hansen was not prejudiced by any claimed deficiencies.  **Hansen-USDC**, at 25.  But, again, because Hansen cannot show that reasonable jurists would find debatable or wrong the district court's assessment of **Strickland**'s deficiency prong on this issue, we need not reach the prejudice prong.

C.

_____

[4]Citing **Lockett v. Anderson**, 230 F.3d 695, 714 (5th Cir. 2000), Hansen contends counsel should have been alerted by Dr. Matherne's test results that more investigation was needed.  Hansen did not raise this issue in the district court, asserting instead only that Hansen's attorney was ineffective in failing to call Dr. Matherne at sentencing.  We, thus, cannot consider this new claim. **Goodwin**, 224 F.3d at 459 n.6.

14

Hansen claims the district court held improperly that two of his claims were procedurally barred and, alternatively, were without merit:  that the State's suppression of a statement by Barbara Duncan, a cell mate of Krecic, violated **Brady v. Maryland**, 373 U.S. 83 (1963), and Hansen's due process rights; and that, concomitantly, the **Brady** violation *rendered* his trial counsel ineffective.  Duncan's recorded and transcribed statement informed law enforcement officers that, *inter alia*, she overheard Krecic: tell a man, "I am the one that killed ...."; and tell others that Hansen would do whatever Krecic said.

Hansen contends the district court erred:  by making no finding that the Mississippi Supreme Court regularly and consistently applies the procedural bar in cases, such as this, where the underlying facts are outside the trial record and not readily discoverable at time of trial; and by not considering Duncan's affidavit in determining whether the suppression of her statement was material.

The district court applied the procedural bar found in § 99-39-21(1) of the Mississippi Code, concluding Hansen did not meet the "cause and prejudice" or "actual innocence" exceptions because: his counsel could have raised the claim on direct appeal; and Hansen did not show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in the light of all the evidence, including Krecic's alleged

15

statements overheard by Duncan. *Hansen-USDC*, at 33; *see* MISS. CODE ANN. § 99-39-21(1) ("Failure by a prisoner to raise ... issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal ... shall constitute a waiver thereof and shall be procedurally barred.")  In addition, the court also considered the merits of the *Brady* claim and held the exculpatory value provided by Duncan's statement was not sufficient, in the light of all the contrary evidence, to undermine confidence in the jury's verdict. *Hansen-USDC*, at 40-41.

## 1.

In support of his contention that the Mississippi Supreme Court does not consistently apply the § 99-39-21(1) procedural bar, enacted in 1984, Hansen cites *Malone v. State*, 486 So. 2d 367 (Miss. 1986), and *Read v. State*, 430 So. 2d 832 (Miss. 1983).  In *Malone*, the petitioner, on application for post-conviction relief, asserted there was a plea bargain agreement between the prosecution and its star witness that had not been disclosed pre-trial.  486 So. 2d at 368.  Concluding the petitioner made a prima facie showing there was such a plea agreement, the Mississippi Supreme Court remanded the case to the trial court for an evidentiary hearing on the issue; the court did not cite, much less discuss, the § 99-39-21(1) procedural bar.  *Id.* at 369.  We, thus, have no way of knowing whether the petitioner could have raised his *Brady* claim on direct appeal.  Moreover, in *Malone,* the issue was whether

16

the plea bargain even existed pre-trial. On the other hand, Hansen's attorney knew about Duncan's statement in April 1988, approximately five months after trial and more than two years before he filed his direct appeal.

In **Read**, rendered prior to the enactment in 1984 of the § 99-39-21(1) procedural bar, the Mississippi Supreme Court concluded that a petitioner is not precluded from raising an ineffective assistance of counsel claim in a post-conviction proceeding even though he raised the same claim on appeal. 430 So. 2d at 841. But in the case at hand, as noted by the district court, Hansen did not raise on appeal this ineffective assistance of counsel claim. And, although the procedural bar does not apply to an ineffective assistance of counsel claim when the petitioner is represented by the same counsel at trial and on appeal, **Martin v. Maxey**, 98 F.3d 844, 848 (5th Cir. 1996), Hansen does not contend his trial counsel was ineffective as a result of his own error or omission; instead, Hansen claims counsel was rendered ineffective by the State's suppressing Duncan's statement. *Cf.* **Strickland**, 466 U.S. at 687.

Hansen has not shown Mississippi's procedural bar is not regularly applied to "classes of claims" such as his. *Cf.* **Sones v. Hargett**, 61 F.3d 410, 417 (5th Cir. 1995). Therefore, jurists of reason would not find it debatable whether the district court was correct in applying the bar.

17

In the alternative, we consider Hansen's claim that the district court erroneously: concluded trial counsel's strategy was not adversely affected, particularly at the penalty phase; and refused to consider Duncan's affidavit in determining whether the suppression of her statement was material. In support of this claim, Hansen challenges the following decision by the district court to not consider Duncan's affidavit: "[T]he transcript of the interview [of Duncan] by the two officers is the subject of the **Brady** claim, not Duncan's affidavit statements. Therefore, the contents of the affidavit are not relevant to the Court's determination". **Hansen-USDC**, at 34.

Hansen asserts: Duncan's affidavit demonstrates she would have given testimony that Krecic manipulated Hansen; and this mitigating evidence is sufficient to undermine confidence in the death penalty imposed by the jury. *See* MISS. CODE ANN. § 99-19-101(6)(e) (jury to consider as one of the mitigating factors whether a defendant "acted under extreme duress or under the substantial domination of another person").

To prevail under **Brady**, Hansen must show: Duncan's statement was not disclosed; it contained favorable evidence; and the evidence was "material". *E.g., **Wilson v. Whitley***, 28 F.3d 433, 435 (5th Cir. 1994), *cert. denied*, 513 U.S. 1091 (1995). Evidence is "material" if there is a reasonable probability that, had it been

disclosed, the result of the trial would have been different. *Id.* at 434. "The materiality of *Brady* material depends almost entirely on the value of the evidence relative to the other evidence mustered by the state." *Id.* at 439 (internal quotation marks omitted).

The transcript included statements by Duncan: that she overheard Krecic tell others Hansen would do whatever Krecic said; and that, before Officer Ladner was shot, Krecic told Hansen to "'Shoot the bitch. Shoot the bitch'". The district court found that any mitigating value of this evidence was "less than crystalline" and not sufficient to undermine confidence in the jury's verdict. *Id.* at 41. Furthermore, it concluded that any mitigating value was cumulative because other mitigating witnesses had testified Krecic was "the leader" of Hansen. *Id.*

Regarding Hansen's contention that the district court erred by not considering Duncan's affidavit regarding Krecic's manipulation of Hansen, the district court did consider this evidence and its effect on the verdict, albeit via the transcript of Duncan's earlier statement, rather than Duncan's affidavit. Hansen has not shown that reasonable jurists would find debatable or wrong the district court's assessment that the evidence was not material.

D.

Hansen next contends that the district court erred in upholding the exclusion of future-behavior-testimony by Fred Weist,

19

the social worker who counseled Hansen for several months between August 1981 and April 1982 (approximately five years before the murder) at a prison in Florida, where Hansen was then incarcerated. In *Lockett v. Ohio*, the Supreme Court held:

> [T]he Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.

438 U.S. 586, 604 (1978) (emphasis in original; footnote omitted).

Specifically, Hansen asserts the district court misapplied *Skipper v. South Carolina*, 476 U.S. 1 (1986). At issue in *Skipper* was whether the exclusion of testimony regarding petitioner's good behavior during his pre-trial time in jail deprived him of his right to present relevant mitigating evidence. *Id.* at 4. The Court concluded such evidence could not be excluded. *Id.* at 5.

At the penalty phase of Hansen's trial, the court sustained the State's objections to questions regarding future events: "Do you think [Hansen] would adapt well in prison life?"; and "[D]o you think [Hansen] is treatable in any prison setting?". Stating it was overruling the State's objection to questions regarding past events and, thus, admitting Weist's testimony as to Hansen's peaceful, helpful disposition during his previous incarcerations, the trial court ruled that questioning Weist about future events was speculative and invaded the province of the jury.

20

The Mississippi Supreme Court agreed.  It did so on the basis that the record failed to reflect Weist was qualified or accepted as an expert in predicting future behavior.  *Hansen*, 592 So. 2d at 147 (citing MISS. R. EVID. 702).

The district court concluded that *Skipper* does not require the trial court to admit speculative, opinion testimony by a non-expert witness concerning a petitioner's *future* behavior in jail. *Skipper*, 476 U.S. at 6 ("Defense counsel was not offering opinion testimony regarding future events.").

Hansen has not shown that reasonable jurists would find the district court's ruling debatable or wrong.

E.

Hansen contends the district court misapplied the standard of *Brecht v. Abrahamson*, 507 U.S. 619, 629, 638 (1993) (internal quotations omitted) (whether, for federal habeas relief purposes, "trial error" constitutional violation "had substantial and injurious effect or influence in determining the jury's verdict"), by concluding a Confrontation Clause violation nevertheless constituted harmless error.

This contention concerns the following cross-examination of Krecic by the State:

Q.  Do you recall giving a statement to Sergeant Dean Shephard in Gulfport, Mississippi on April the 11th of this year [1987]?

A.  I'm claiming the Fifth Amendment.

21

Q.    Do you recall telling the officer that, quote, you know who did it, it wasn't me?

A.    I'm claiming the Fifth Amendment.

Q.    Do you remember that that answer was in response to the question about who had shot the highway patrolman?

A.    I'm claiming the Fifth Amendment.

Hansen contemporaneously objected.

On appeal, the Mississippi Supreme Court ruled there had been a Confrontation Clause violation; but, applying *Chapman v. California*, 386 U.S. 18 (1967), it concluded:  in the light of all the evidence, the constitutional error was "harmless beyond a reasonable doubt".  *Hansen*, 592 So. 2d at 135-37.

Citing 28 U.S.C. § 2254(d), the district court held the Mississippi Supreme Court's ruling was neither contrary to, nor involved, an unreasonable application of, clearly established federal law.  *Hansen-USDC*, at 12.  Agreeing that the State had violated the Confrontation Clause, the district court performed its own harmless error review under the *Brecht* standard, and concluded:  "the error did not result in actual prejudice and did not have a 'substantial and injurious effect or influence in determining the jury's verdict'".  *Id.* at 13 (quoting *Brecht*, 507 U.S. at 638).  The district court reasoned:  the questions regarding Krecic's alleged statement were few; the statement was *exculpatory* and did not directly incriminate Hansen; and the "statement did not recite 'in considerable detail the circumstances leading to and

22

surrounding the alleged crime' and did not provide a 'crucial link in the proof'". *Id.* (quoting *Douglas v. Alabama*, 380 U.S. 415, 417, 419 (1965)).

Moreover, adopting the following facts found by the Mississippi Supreme Court to be indicative of Hansen's guilt, the district court determined that other evidence "overwhelmingly" supported finding guilt:

> To begin with, all of the evidence shows two persons, a young man and a young woman, with [State Trooper] Ladner along I-10 on the evening of April 10, 1987. Reasoning backwards, we know Hansen was the man because (a) Daisy Morgan identified Hansen as the man who, a short while later, arrived with a female companion in a Highway Patrol car, and stole Morgan's Ford Ranger; (b) Pat Ladner identified Hansen as the man who arrived at his house later that evening with a female companion; (c) Jody Wade and Charlie Williams identified Hansen whom they took, with Krecic, first to the Ladners' [home] and thereafter toward Waveland; (d) State Troopers Freddie Keel and Darryl Deschamp identified Hansen as the man they took into custody while en route to Waveland with Wade and Williams; and (e) Critically, Troopers Keel and Deschamp found on Hansen — some six hours after Ladner had been shot — (1) the MHSP standard issue .357 Magnum which had been checked out to Ladner and (2) a .38 caliber handgun — the bullet removed from Ladner's neck had been fired from a .38 caliber gun.
>
> If this be not enough, we return to April 10's early evening hours and find that (f) Kathy Romany, who had followed the blue town car westward along I-10 all the way from Florida, identified Hansen as the driver; (g) William Forrest Runnels and Charles E. Childress, both motorists passing by, said they saw a blue town car, a state trooper's

car, and a man and a woman and, of importance, that they saw the man stuffing a large pistol into his pants; (h) Steve Diaz identified Hansen as the man he saw standing over the wounded and bleeding state trooper and as the man who drove away in the trooper's car; and (i) Paul Tibbetts and Donald Ray Meche each made an in-court identification of Hansen as the man who shot and killed Trooper Ladner.

If the cake need icing, (j) Clydell Morgan testified that he found Hansen's left thumbprint on the consent to search form, Hansen's left little fingerprint on the map, and a right palmprint on another incriminating document. Add to this (k) the absence of the slightest shred of evidence that Krecic pulled the trigger, and we have in the record, acceptable of consideration by reference to the Court's instructions to the jury, evidence that overwhelms.

**Hansen-USDC**, at 13-14 (alterations in original; quoting **Hansen**, 592 So. 2d at 136-37).

The district court concluded: "In light of the record taken as a whole, the Court finds that the prosecution's violation of [Hansen's] rights under the Confrontation Clause did not have a 'substantial and injurious effect or influence in determining the jury's verdict'". **Id.** at 14 (quoting **Brecht**, 507 U.S. at 638). Reasonable jurists would not find this application of **Brecht** debatable or wrong. *See* **Brecht**, 507 U.S. at 638-39.[5]

---

[5]In **Tucker v. Johnson**, 242 F.3d 617, 629 n.16 (5th Cir.), *cert. denied*, 2001 WL 744253 (5 Sep. 2001), our court noted the doubt expressed regarding whether the **Brecht** standard is still viable post-enactment of AEDPA. The parties have not briefed the issue. In any event, because Hansen has not shown he is entitled to relief under either standard, we need not decide it. *See* **id.**

24

F.

Hansen's last claim is that he was entitled to an evidentiary hearing.

1.

Subject to the exceptions stated in 28 U.S.C. § 2254(e)(2), if a petitioner failed in state court to develop the factual basis of a claim, the federal court may not hold an evidentiary hearing on that claim.  Such failure is not established unless there is  "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel".  *(Michael) Williams v. Taylor*, 529 U.S. 420, 432 (2000).

Hansen contends that, in state court, he presented facts supporting the following claims: (1) his trial counsel was ineffective in failing to properly investigate and present mitigating evidence; (2) his trial counsel was ineffective in failing to present psychological evidence at the penalty phase; (3) the State's refusal to provide his trial counsel with his Florida prison records violated *Brady*; and (4) the State's suppression of Duncan's statement violated *Brady*.  (Each claim is discussed *supra*, except for (2), concerning prison records.)  The State does not assert that Hansen failed in state court to develop the factual basis for these claims.

Nevertheless, citing *McDonald v. Johnson*, 139 F.3d 1056, 1058-60 (5th Cir. 1998), Hansen contends AEDPA's presumptions and

25

limitations concerning state court findings and evidentiary hearings in district court do not apply when the state court does not conduct an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(1) (presumption of correctness accorded state court fact finding). Hansen misreads **McDonald**; it stands for the proposition that a petitioner does not "fail" to develop a factual basis for his claim when a state court finds the claim procedurally barred. The Mississippi Supreme Court applied a procedural bar only to Hansen's claim regarding the State's suppression of Duncan's statement; the court found the other claims meritless.

Hansen did request an evidentiary hearing in the state court on the other claims. Although "[m]ere requests for evidentiary hearings will not suffice", **Dowthitt v. Johnson**, 230 F.3d 733, 758 (5th Cir. 2000), *cert. denied*, 121 S. Ct. 1250 (2001), Hansen was diligent in procuring affidavits in support of each of his claims. *Cf. id.* Accordingly, Hansen did not fail in state court to develop the factual basis of his claims. Therefore, he was not precluded by § 2254(e)(2) from seeking an evidentiary hearing in district court.

2.

The denial of an evidentiary hearing is reviewed for abuse of discretion. **Clark v. Johnson**, 227 F.3d 273, 284-85 (5th Cir. 2000), *cert. denied*, 121 S. Ct. 1129 (2001). It goes without saying that, when a district court has "sufficient facts before it

26

to make an informed decision on the merits of [the petitioner's] claim, it does not abuse its discretion in failing to conduct an evidentiary hearing". **Barrientes,** 221 F.3d at 770 (internal quotation marks omitted). To find an abuse of discretion, we must be convinced that, if proven true, petitioner's allegations would entitle him to relief. **Clark v. Johnson**, 202 F.3d 760, 766 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000). The district court did not abuse its discretion by denying an evidentiary hearing.

### a.

As discussed *supra*, based upon our review of the record, including the exhibits submitted in support of his petition, we conclude that Hansen has alleged no fact which, if proved, would entitle him to relief on his ineffective assistance claims or his **Brady** claim regarding Duncan's statement.

### b.

Regarding the other **Brady** claim (alleged suppression of Hansen's Florida prison records), Hansen has not shown the district court erred in concluding the State was not under a duty to disclose those records. *See* **Hansen-USDC**, at 28 (citing **United States v. Ellender**, 947 F.2d 748, 757 (5th Cir. 1991)).

### III.

In sum, for each of his claims, Hansen has failed to make the showing required by 28 U.S.C. § 2253(c)(2) for obtaining a COA: he has failed to demonstrate either that "reasonable jurists could

27

debate whether" his habeas "petition should have been resolved" differently or that the claims he has raised at least "were adequate to deserve encouragement to proceed further". *Slack*, 529 U.S. at 484 (internal quotation marks omitted). Accordingly, a COA is

*DENIED.*
